[No. 5321.]
[No. 2959 C. A.]

PARK v. PARK ET AL.

1. Husband and Wife—Alienation of Affections—Evidence—Sufficiency.

In an action by a wife for alienation of affection of her husband, evidence reviewed and held insufficient to warrant a recovery.—P. 356.

2. Appellate Practice—Admission of Evidence—Inadmissibility Assumed by Both Parties—Not Reviewed on Error.

Where both parties to an action assume that certain declarations made by plaintiff's husband to her during their marriage were inadmissible without the husband's consent, and after his refusal to consent no attempt was made to prove such declarations, the question of the admissibility of such declarations without such consent is not properly before the appellate court for review.—P. 360.

3. Appellate Practice—Alleged Errors—No Prejudice Shown.

Where certain letters, offered in evidence by plaintiff, and which were excluded by the court, contained nothing tending in any degree to prove the plaintiff's cause of action or to corroborate her testimony, but their tendency was rather to contradict her in every important particular, she was not prejudiced by their exclusion.—P. 361.

*Error to the District Court of the City and County of Denver.*

*Hon. F. T. Johnson, Judge.*

Action by Julia Park against William S. Park, Martha Park and Elizabeth Park. From a judgment in favor of defendants, plaintiff brings error.
                                              *Affirmed.*

Mr. Geo. W. Taylor and Mr. W. T. Rogers, for plaintiff in error.

Mr. M. J. Bartley, for defendants in error.

Mr. Justice Campbell delivered the opinion of the court:

This is an action by Julia Park, wife of Charles H. Park, to recover damages against defendants— the two sisters and the son of Charles H. Park—for alienating her husband's affections, harboring him, and causing him to abandon and desert her. The material allegations of the complaint were denied, and upon trial to the jury, after both parties had introduced their evidence, the court, upon motion of defendants, directed the jury to find a verdict in their favor. From that judgment plaintiff sued out this writ of error.

The errors assigned concern the legal sufficiency of, and the rulings of the court upon, the evidence. It is doubtful if plaintiff has conformed to the practice governing reviews in this court, so as to entitle her to be heard upon the matters argued in her counsel's brief, but we shall disregard defendants' motion to dismiss for such failure, and dispose of this writ on its merits.

1. Counsel for plaintiff says that a defendant who moves for a verdict admits, for the purpose of the motion, that the evidence received in behalf of plaintiff is true; and if it is legally sufficient to support a verdict, the motion cannot be granted, citing *Schwenke v. Union Depot Co.,* 12 Colo. 341, 345, and *Denver Tramway Co. v. Owens,* 20 Colo. 107, 119. Counsel also says that any defects in plaintiff's proofs, if aided or cured by the defendants' own evidence, cannot be taken advantage of by the latter upon this review. He therefore says that, unless the court, upon all the evidence produced, would have

set aside a verdict had one been returned in plaintiff's favor, this judgment must be reversed.

For our present purpose, let such contention be granted. We proceed, first, to examine the evidence to see if it is legally sufficient to prove plaintiff's cause of action. The following material facts are not in serious controversy. All the parties lived in Pennsylvania, when we first hear of them. In October, 1879, the plaintiff and Charles H. Park were married. The first wife of Charles had then been dead about eight years. During the time between the two marriages, Elizabeth, the sister of Charles, kept house for him; and his son William, a boy fourteen years old at the time of the second marriage, lived with the family, and Martha occasionally was in the home.

About three weeks after the second marriage, Elizabeth ceased to live with her brother. William remained in his father's home for several years. The two sisters moved to Denver, Colorado, in 1889, Elizabeth in April, and Martha in June. William followed in 1890, remaining in Denver till 1891, when he went to Garfield county to live on a ranch, the sisters remaining in Denver, Martha being engaged in teaching school, and Elizabeth in dressmaking. Meanwhile the plaintiff and her husband continued to live in Pennsylvania.

Some time later Charles H. Park first came to Denver on a visit to his sisters, where he remained for about three months, then went to his son's ranch, and afterwards returned to his wife in Pennsylvania. In May, 1897, he returned to Colorado for his permanent residence, and was followed by his wife some time in October of the same year. They kept a boarding house in Denver for several months. Later—just when is not altogether clear from the evidence—he left Denver with the intention of no

longer living with his wife and went to the ranch of his son in Garfield county, and there brought a suit for divorce, which seems afterwards to have been removed for trial to one of the courts in the city and county of Denver.

In the light of the foregoing, the particular facts presented by plaintiff, in her briefs, and which she says are legally sufficient to establish the charges she makes against defendants, have thus been stated by her counsel:   That the morning after plaintiff's marriage, Elizabeth and Martha stated to her that she must have given their brother love drops and done all the courting; that they had not the least idea that he would bring a young girl like her to his home, and when plaintiff replied that she and her husband loved each other, they laughed at her. That William made it unpleasant for her after she came to her husband's home by shooting her in the eye with an arrow while she was engaged in washing, and Elizabeth justified her nephew's conduct by saying that his father did not care if he broke every window in the house.   William seemed to be of the same opinion, and stated to plaintiff that he did not see why his father married her and brought her to his home.   Martha and Elizabeth insisted on having a folding door between their room and plaintiff's kept open, and insinuated that plaintiff communicated a vile disease to their brother.   William virtually took charge of and "ran the house" without consulting plaintiff, and on one occasion made a violent assault upon her.   Elizabeth and Martha told plaintiff their family did not want her, and that her talk about love was nonsense, there was nothing of it in the world, and that she would have to give up her husband.

After defendants came to Colorado, they wrote several letters to plaintiff's husband which plaintiff

says she saw, the purport of which was the acknowl-
edgement of the receipt of money which her husband
had sent to them, and these letters also contained
invitations to the husband to come out to William's
ranch; that he, but not plaintiff, was needed there.
On receipt of these letters, the husband seemed to be
dissatisfied, and would not be like himself, not speak-
ing for days at a time. That after he returned from
his first visit to Colorado to their home in Pennsyl-
vania his conduct was changed, and again he seemed
to be dissatisfied. That the return of Charles to
Colorado in May, 1897, was without warning to
plaintiff, and she was ignorant of his whereabouts
for about a week, when she received a letter from him
in Denver, and after some correspondence between
her and her husband she came to the city of Denver.
Upon her arrival there her husband was not at the
train to meet her as had been arranged, whereupon
she went to the school house, where Martha was en-
gaged in teaching, and found her there, but Martha
refused to shake hands with her, and falsely told her
that her husband was at William's ranch, and when
plaintiff expressed an intention of going there,
Martha said she was not wanted.

That after plaintiff and her husband had kept
a boarding house in Denver for about four months,
he opened up communication with defendants, and
trouble with plaintiff was renewed. That William
assisted his father, and furnished him money to
bring the divorce suit, and that the husband got
about $500 of her money from the bank and left her
without any support when he took up his permanent
residence with his son at the ranch.

We have thus detailed the various facts which
plaintiff claims that the evidence establishes, and
which, for the purposes of this case, she says must be
taken as true, and as legally sufficient to uphold a

verdict in her favor, had the jury returned one. We do not say that the evidence establishes all these facts, but we may assume that her claim in that respect is well founded. In their testimony defendants positively deny ever having made any efforts whatever to induce plaintiff's husband to leave her, or to alienate his affections. In every material point the three defendants squarely contradict plaintiff in her testimony, and they are corroborated in important particulars by certain facts and circumstances which it is not necessary to mention.

It nowhere appears in this record as a fact, and not at all, unless unfounded suspicions which plaintiff undoubtedly entertains, and unwarranted inferences which she deduces, are to be treated as facts, that either of the defendants ever sought improperly to influence her husband against, or to turn his affections from, her, or to persuade him to abandon or cease to live with her. There is not a particle of evidence that any of the statements which she testifies they made to her were ever communicated to her husband either by them or her, or that his alleged desertion, or loss of affection, were in any degree caused by their acts or conduct. It may be true that neither of the defendants liked the plaintiff or approved of her marriage, after they became acquainted with her, but if either of them was guilty of the charges which she makes against them in her complaint, there is no legal or sufficient proof of it in this record. Had the jury returned a verdict upon this evidence in plaintiff's favor, it would have been the duty of the court to set it aside as having no legal support and manifestly against the weight of the evidence. Mere suspicions in which plaintiff indulges, and inferences from conduct that a sane mind would not draw, are not sufficient to justify a re-

covery of damages, and the court did right in directing a verdict for the defendants.

Plaintiff's contention that her case is aided by the defendants' own evidence is wholly without merit. There is nothing in the testimony of either of the defendants, or any evidence produced by them, that tends in any degree, directly or indirectly, to sustain, or render probable, any of the charges contained in the complaint.

2. Counsel strenuously argues that the court erred in not permitting plaintiff to testify to her husband's declarations made to her during the existence of the marriage, and in refusing her offer of his letters written to her during coverture. Reliance is had on *Williams v. Williams*, 20 Colo. 51, wherein the court held, in a similar action by the wife, that declarations of the husband having reference to his separation, or contemplated separation, were admissible for the purpose of showing what had probably caused such separation, though his mere declarations were not admissible to show what defendant's conduct really was. In that case the objection to such declarations which apparently defendant interposed was that declarations of a person not a party to an action are incompetent. The objection (made here) seems not to have been made there, at least was not discussed by the court, that under section 4824, Mills' Ann. Stats., neither husband nor wife during the marriage or afterwards shall be, without the consent of the other, examined as to any communication made by one to the other during the marriage. But assuming that such declarations are proper under the authority of the case cited, we are of opinion that no such question is here presented.

The declarations of the husband apparently were considered by counsel for both parties to be

incompetent without the husband's consent, and when plaintiff's counsel called him as a witness and asked him if he would consent that his wife might testify to his declarations that occurred during the marriage in relation to the cause of separation, and he refused to give his consent, no attempt was made to interrogate plaintiff with reference thereto, or to prove such declarations. So far as the oral declarations are concerned, we do not have before us a case where the court refused to admit them.

With respect to the husband's letters to his wife, which it is said were excluded by the court, we say, first, that it does not clearly appear from the record whether they were admitted or rejected. They are reproduced in the abstract, and an examination of them shows that they contain nothing whatever tending in any degree to prove the plaintiff's cause of action, or to corroborate her testimony. Their tendency is to contradict her in every important particular, and if they were excluded by the court, such ruling in no wise prejudiced the plaintiff.

3. Counsel uses strong and extravagant language in characterizing the conduct of the trial judge as unfair to the plaintiff. We have examined the record with much care, but are unable to discover any evidence of unfairness. Indeed, great latitude was allowed plaintiff in her attempt to show that defendants had wronged her. If any errors were committed in rulings on evidence, they were against the defendants, rather than the plaintiff.

Plaintiff signally failed to prove her case, and in directing a verdict for defendants and dismissing the action, the court was clearly right, and its judgment is therefore affirmed.            *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.