[Crim. No. 16894. First Dist., Div. One. Dec. 22, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
DORAN WRENSHALL JACKSON, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Carol Jean Ryan, Harriet Wiss Hirsch, Gail R. Weissheimer, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KONGSGAARD, J.**\*—By an amended information defendant was charged with receiving stolen property in violation of Penal Code section 496, subdivision 1. Defendant entered a plea of not guilty; trial was by jury. Defendant was found guilty as charged and sentenced to the state prison for the term prescribed by law. Defendant has appealed from the judgment of conviction.

---

\*Assigned by the Chairperson of the Judicial Council.

STATEMENT OF FACTS

In August of 1975 Robert Doremus, a resident of Glendale, California, reported the theft of a yellow Zeiman two-axle trailer owned by him. In January 1976 Officer Holbrook of the California Highway Patrol went to the vicinity of the home of Mrs. Jean Jackson, defendant's mother, in Ukiah, California, to investigate a report that a suspicious trailer was located on her property. Officer Holbrook had received information that the license plate on the trailer was stolen, and that the trailer was being dismantled. Holbrook drove to a public parking lot from which he could see the trailer. He read the license number and confirmed that the plate had been stolen from its owner in August 1975. He then obtained Mrs. Jackson's permission to enter the lot and inspect the trailer. It was a two-axle yellow Zeiman trailer, almost new, but had been partially dismantled with a cutting torch. Holbrook was unable to find a serial number on the trailer although such a vehicle would normally bear a serial number.

After reviewing a computer listing of stolen vehicles, Holbrook contacted Mr. Doremus, who gave him a further description of the trailer and some of its distinguishing features. Armed with this added information Holbrook returned to Mrs. Jackson's property in late January of 1976 and observed that the trailer had been further dismantled, with only the bed of the trailer remaining. Mrs. Jackson informed Holbrook that her son (the defendant) had brought the trailer to her property in the summer of 1975 and had recently removed the missing trailer parts.

In January 1976 defendant called Holbrook by telephone and within the space of one week they had several other telephone conversations as well as a personal meeting. Even though he was advised the trailer was stolen, the defendant insisted it was his and would give no explanation as to how he obtained it or where the missing parts were.

Nothing further occurred in the investigation until October 17, 1976, when Officer Marcheschi of the Ukiah Police Department observed defendant at a storage garage in Ukiah. Knowing defendant was the subject of traffic and criminal warrants of arrest, Marcheschi summoned other officers who arrested defendant on the warrants. During the arrest Marcheschi observed, through the open garage door, the missing trailer parts in the garage. Marcheschi previously had several conversations with Officer Holbrook about the stolen trailer and the missing parts. On closer observation Marcheschi noticed some of the parts had been cut with an

acetylene torch. Also observed in appellant's storage garage were two MG automobile engines, a Chevrolet automobile engine, two electric winches, a closed-circuit television camera, and a public address system amplifier. The serial numbers on all of the items had been removed or obliterated.

Defendant was represented by counsel through the preliminary examination and the motion to suppress. Thereafter defendant requested and was given permission by the trial court to represent himself at trial.

We consider defendant's contentions on appeal.

I. Denial of the motion to suppress pursuant to Penal Code section 1538.5.

Defendant moved to suppress all of the physical evidence taken from the storage garage on October 17, 1976. This motion was submitted on the basis of the preliminary hearing transcript. The court denied the motion and made a specific finding that all of the items taken by the officers were in plain view.

■ It is well settled that evidence in plain view of an officer who has reached his vantage point properly may be seized without a warrant. (*People* v. *Superior Court* (Peck) (1974) 10 Cal.3d 645, 648 [111 Cal.Rptr. 565, 517 P.2d 829].) Moreover, the observation of items in plain view is not a search in the constitutional sense. (*Ker* v. *California* (1963) 374 U.S. 23, 43 [10 L.Ed.2d 726, 743-744, 83 S.Ct. 1623]; *People* v. *Sirhan* (1972) 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121] [cert. den. 410 U.S. 947 (35 L.Ed.2d 613, 93 S.Ct. 1382)].)

■ It is clear from the evidence produced at the preliminary hearing that the Ukiah officers acted properly in arresting appellant. Accordingly, they had a right to be at his storage garage to make the arrest. When appellant was arrested the garage door was open and the stolen trailer parts were plainly visible to Officer Marcheschi from outside the garage. Based on his knowledge of Officer Holbrook's investigation, Marcheschi had probable cause to believe the trailer components to be stolen property.

The automobile engines, electric winches and other items that were seized were also in plain view in the garage. As the stolen trailer parts were in the garage, the officers reasonably suspected that the other items

might also be stolen. Accordingly, it was reasonable and proper for them to extend their investigation to the engines, winches, amplifier and television camera, all of which were in plain view, to determine if they were stolen. (*People* v. *Superior Court (Aslan)* (1969) 2 Cal.App.3d 131 [82 Cal.Rptr. 507]; cf., *People* v. *Eitzen* (1974) 43 Cal.App.3d 253 [117 Cal.Rptr. 772].)

There was substantial evidence to support the factual finding of the trial court that the items taken were in plain view. The denial of the defendant's motion to suppress the evidence was not error.

II. Waiver of right to counsel.

Defendant contends he did not make a knowing and intelligent waiver of his right to counsel at trial.

In *Faretta* v. *California* (1975) 422 U.S. 806, 835 [45 L.Ed.2d 562, 581-582, 95 S.Ct. 2525], the United States Supreme Court declared that a defendant in a criminal case has a constitutional right to represent himself if he knowingly and intelligently waives his right to counsel. The court explained, "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" (*Ibid.*) The requirement of a competent, knowing and intelligent waiver is satisfied if it is established that the defendant is literate and understanding and that he has voluntarily exercised the choice of representing himself. (*People* v. *Dale* (1978) 78 Cal.App.3d 722, 730-731 [144 Cal.Rptr. 338]; *People* v. *Elliott* (1977) 70 Cal.App.3d 984, 991 [139 Cal.Rptr. 205].)

■ The record in this case amply demonstrates that appellant's election to proceed in propria persona was competent, knowing and intelligent. Appellant first requested permission to represent himself before the hearing on the motion to suppress. Appellant's literacy was shown by his preparation of a motion under Penal Code section 1538.5 and a related "bill of particulars" which was incorporated into the section 1538.5 motion. Moreover, his attorney expressed the belief that the defendant's intelligence and experience with the judicial system would

allow him to adequately represent himself. The dangers of self-representation were made apparent to the defendant by the trial judge who advised him of the complexities of a suppression motion.[1]

Defendant's understanding of his right to counsel and his decision to represent himself were further demonstrated by the fact that he had represented himself in a prior criminal proceeding.

We are satisfied the court properly granted defendant's motion to represent himself and that he knowingly and intelligently waived his right to counsel.

III. Failure to inform defendant of his privilege against self-incrimination.

The trial judge did not specifically inform defendant of his privilege against self-incrimination before defendant took the stand and testified.

■ It is the law that "When an unrepresented defendant is about to take the stand in a criminal case, the court must make certain that the defendant is aware of his constitutional privilege not to testify. (*People* v. *Kramer* (1964) 227 Cal.App.2d 199, 201-203 . . .; *People* v. *Glaser* (1965) 238 Cal.App.2d 819, 828-829. . . .)" (*People* v. *Wells* (1968) 261 Cal.App. 2d 468, 481 [68 Cal.Rptr. 400].) There is an implication, however, in *People* v. *Wells, supra,* that a clear showing on the record that the defendant was already aware of his privilege would relieve the trial court of this duty. Respondent argues that the requisite showing is demonstrated by defendant's prior experience with self-representation in criminal proceedings and by a discussion in chambers wherein defendant was advised he could be impeached by reference to a prior felony conviction should he elect to take the witness stand.

Respondent's argument is answered by *People* v. *Kramer* (1964) 227 Cal.App.2d 199 [38 Cal.Rptr. 487], and *Wells.* In *Kramer* the trial judge had advised the pro. per. defendant that if he took the stand he could be impeached by reference to a prior felony conviction. Such advice was not the equivalent of informing defendant "he had the privilege to refuse to

---

[1]The inquiries to be made and the advice to be given by a trial judge to a pro. per. defendant to emphasize the dangers of self-representation have been catalogued by Justice Gardner in *People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36]. We commend this procedure to trial courts; we note, of course, that the case at bench was tried *before* the opinion in *Lopez* was filed.

testify." (227 Cal.App.2d at p. 201.) In *Wells* the court observed that while the defendant's previous experience in criminal proceedings may afford some basis for the belief that defendant was aware of the privilege, it falls short of demonstration. While these circumstances may arouse a suspicion of an informed waiver, they do not equate with a clear showing in the record of an informed waiver of the privilege against self-incrimination. (261 Cal.App.2d at p. 481.) Having concluded that constitutional error occurred, we must determine the scope of the error.

In *Kramer* and in *Killpatrick v. Superior Court* (1957) 153 Cal.App.2d 146 [314 P.2d 164], the courts concluded that the failure to advise a pro. per. defendant of his constitutional right not to testify at his own trial was a denial of due process and the error was deemed to be reversible per se. In *People v. Glaser* (1965) 238 Cal.App.2d 819, 829-830 [48 Cal.Rptr. 427] (cert. den. 385 U.S. 880 [17 L.Ed.2d 107, 87 S.Ct. 164], rehg. den. 385 U.S. 965 [17 L.Ed.2d 310, 87 S.Ct. 402]), the court recognized the reversible per se rule of *Kramer* and *Killpatrick,* but held that the defendant could not raise the error in a collateral attack on the judgment.

On the other hand, in *Wells,* Justice Friedman simply employed the *Chapman* test of "harmless beyond a reasonable doubt" in determining the scope of error. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].) The *Wells* court observed that: "Some incursions on the guarantee against self-incrimination may turn out to be so harmless in the setting of a particular case that they do not warrant reversal. (*Chapman v. California* (1967) 386 U.S. 18, 22-24 . . .; *People v. Ross* (1967) 67 Cal.2d 64, 73-74 . . .; see also *People v. Glaser, supra,* 238 Cal.App.2d at p. 829; *People v. O'Bryan* (1913) 165 Cal. 55, 67. . . .) Affirmance is possible notwithstanding the error, if the reviewing court finds no reasonable possibility that the error affected the outcome of the trial. (*People v. Ross, supra.*)" (261 Cal.App.2d at p. 481.)

In reviewing the testimony of the pro. per. defendant in *Wells,* the court concluded the defendant's testimony added nothing to the proof of guilt and found the error to be harmless beyond a reasonable doubt.

In a recent opinion, Division Four of this court employed the reversible per se test which was developed in *Kramer* and *Killpatrick.* In *People v. Solomos* (1978) 83 Cal.App.3d 945, 954 [148 Cal.Rptr. 248], the court stated "the defendant's right not to testify at his own trial is one of the most basic and fundamental rights guaranteed by the United States and California Constitutions. Where a defendant conducts his defense

without the aid of counsel, his choice to waive that right and take the stand on his own behalf must be free and informed. In the absence of a knowledgeable and voluntary waiver, the pro. per. defendant, even after *Faretta,* cannot be said to have had a genuine choice in the matter. Under these circumstances, it must be concluded that the defendant has been denied an essential element of due process."

The *Solomos* court concluded that the error required reversal whether it was prejudicial or not, citing *People* v. *Bostick* (1965) 62 Cal.2d 820, 824 [44 Cal.Rptr. 649, 402 P.2d 529]. As we read *Bostick,* however, it appears to us to hold that error of constitutional dimension, including a denial of due process, is not necessarily reversible per se. (See *People* v. *Bostick, supra.*) Under this reasoning "Affirmance is possible notwithstanding the error, if the reviewing court finds no reasonable possibility that the error affected the outcome of the trial. [Citation.]" (*People* v. *Wells, supra,* 261 Cal.App.2d at p. 481.)

■ We prefer to follow the reasoning of the *Wells* court and review defendant's testimony under the *Chapman* test. Moreover we note that the *Solomos* court recognized the viability of the *Chapman* test in determining the scope of error. In addition to its holding that the error was reversible per se, the *Solomos* court did apply the *Chapman* test. In applying *Chapman,* it concluded that under all the circumstances of the case it was unable to state with certainty that the error was harmless beyond a reasonable doubt.

In the case at bench defendant bases his contention of prejudicial error primarily on the ground that during his testimony he "confessed" to the possession of a lost or stolen license plate. That testimony, however, was not news to the jury; it only reiterated facts already well known to the jurors. The jury already knew his story of how he found the plate; he had told it to Officer Holbrook in their phone conversation of January 27, 1976. He even said on tape that he had wondered if the plate were a "problem." In his opening statement, appellant was listing his reasons for believing that the trailer was properly his, and ended with "though it did have a strange license plate." Moreover, the jury had also heard from the former owner of the plate, the officer who found it on the trailer in appellant's mother's yard and determined that it had been stolen, and appellant's mother, who said the plate might not have been on the trailer when it arrived in her yard.

Defendant's own testimony in other particulars related to the seller's receipt for the trailer, a discussion about the pink slip, the price of the

trailer, the purchase date, and an explanation of his removal of the identification numbers on other equipment. Except for the revelation of a few minor details, defendant's own testimony simply reiterated a story well known to the jury and added nothing new to the proof of guilt.

In light of the compelling evidence of appellant's guilt presented by the People in its case-in-chief, there can be no reasonable doubt that the verdict would have been the same had appellant been warned by the court and had he refrained from taking the stand. We declare a belief the error was harmless beyond a reasonable doubt. (See *Chapman* v. *California, supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].)

IV. Adequacy of notice of charges.

After defendant's special demurrer to the original information was sustained, an amended information was filed charging a violation of Penal Code section 496, subdivision 1, receiving stolen property. Defendant did not demur to the amended information. He now argues that the amended information failed adequately to specify the particular stolen property allegedly received or concealed by him.

Defendant expects too much of the information. ■ "The function of criminal pleadings under California law is to give an accused notice of the offense with which he is charged but not to provide him with notice of the particular circumstances of the charge, for such circumstances are furnished him in a transcript of the testimony on which the indictment or information is founded. (*People* v. *Marshall,* 48 Cal.2d 394, 399 fn. 5. . . .) Any uncertainty in the pleading amounts to no more than a defect of form, which should be attacked by demurrer under Penal Code section 1004. Failure to demur to an information on the ground of uncertainty constitutes a waiver of the objection (*People* v. *Heim,* 196 Cal.App.2d 1, 5 . . .; *People* v. *Burness,* 53 Cal.App.2d 214, 218 . . .), and the validity of a subsequent judgment is not affected. (Pen. Code, § 960.)" (*People* v. *Washington* (1971) 17 Cal.App.3d 470, 475 [94 Cal.Rptr. 882], disapproved on other grounds in *People* v. *Najera* (1972) 8 Cal.3d 504, 509, fn. 4 [105 Cal.Rptr. 345, 503 P.2d 1353].)

By failing to demur to the amended information defendant has waived any objection on the ground of uncertainty.

■ Moreover, we observe that the amended information, viewed in light of the testimony adduced at the preliminary hearing, provided

defendant with sufficient notice of the charge against him to satisfy due process. Defendant's contention that he was not informed exactly what property he was accused of receiving is plainly without merit. The trailer and the license plate were the only property shown at the preliminary hearing to have been stolen. We also note that in his brief defendant concedes that it appeared from the preliminary hearing he was held to answer with respect to the trailer only. The remaining property in the garage was introduced in evidence at the time of trial for the limited purpose of showing defendant's knowledge that the trailer was stolen and to show a common plan and scheme of removing identification from valuable property. Defendant cannot reasonably claim confusion of constitutional dimension in not knowing what stolen property he was charged with receiving.

V. Evidence of other possible offenses.

■ Defendant makes an additional assignment of error that the admission in evidence of these other items of personal property taken from the storage garage was prejudicial. These items all had obliterated or missing serial numbers. As noted above these items were admitted into evidence by the trial court with a proper limiting instruction that such evidence was to be considered by the jury for the limited purpose of showing knowledge or common scheme and plan[2] and for no other purpose. The items were clearly admissible for the purposes described. Moreover, we note that no objection was raised to the introduction of such evidence at trial. Any claim of error is therefore obviously waived.

VI. Denial of request for continuance.

Penal Code section 1050 declares a policy that criminal cases be heard at the earliest possible time. In furtherance of that policy, it provided in part, at applicable times: "No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance." (§ 1050 was amended by Stats. 1977, ch. 316, § 18, p. 1263, eff. Aug. 11, 1977.) In *People v. Bethea* (1971) 18 Cal.App.3d 930, 937 [96 Cal.Rptr. 229] (cert. den. 405 U.S. 1042 [31 L.Ed 584, 92 S.Ct. 1325]), the court said: "It is established law that the determination of whether a defendant has affirmatively demonstrated that justice requires a continuance is a factual matter and will not be disturbed on appeal in the absence of a clear abuse of discretion by the trial court."

[2]CALJIC No. 2.50.

After his *Faretta* motion was granted defendant was given 10 days to prepare for trial. His request for continuance was denied. Defendant claims an abuse of discretion.

In this case the record fails to demonstrate any such abuse of discretion. The basis given for the continuance motion was that defendant needed additional time to prepare his defense. However, defendant did not show that he had used due diligence and reasonable effort to prepare for trial, as required by *People* v. *Johnson* (1970) 5 Cal.App.3d 851, 859 [85 Cal.Rptr. 485]. Rather than showing a reasonable need for a continuance, the record demonstrates that defendant had ample time to prepare his defense. He had reason to believe that he would be representing himself 73 days prior to trial and was given 10 days to prepare his defense after his *Faretta* motion was formally granted. Further, he had actively participated in his defense prior to that time.

At oral argument appellate counsel called our attention to *People* v. *Cruz* (1978) 83 Cal.App.3d 308 [147 Cal.Rptr. 740], which held that the trial court's denial of a request for continuance by a pro. per. defendant was an abuse of discretion. Defendant's reliance on *Cruz* is misplaced. In *Cruz*, defendant had been in custody for two and one-half months and was released on bail only four days before his trial was slated to commence. His pro. per. motion for continuance was made on the day set for trial and was denied. Moreover, defendant's motion for continuance was based upon his uncontroverted allegation that he needed additional time to attempt to locate and secure the attendance of a material witness who would give testimony relevant to his principal defense of involuntary intoxication.

No such unusual or extenuating circumstances faced defendant in the case at bench nor were any called to the attention of the trial court. The defendant here had not been in custody prior to trial and had actively participated in trial preparation with counsel prior to the time he chose to proceed in pro. per. We find no abuse of discretion in the denial of the motion for continuance.

Having considered all of the contentions of defendant on appeal, we find no reversible error.

Judgment affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied January 17, 1979, and appellant's petition for a hearing by the Supreme Court was denied February 28, 1979.