[No. D005351. Fourth Dist., Div. One. Apr. 26, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
EARL DOANE, Defendant and Appellant.

854

COUNSEL

Janice M. Lagerlof and Howard Cohen, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Janelle B. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KREMER, P. J.—Earl Doane was convicted in three separate jury trials of possession of amphetamines (Health & Saf. Code, § 11377, subd. (a), Super. Ct. case No. CR 75182), vehicle theft (Veh. Code, § 10851, subd. (a), Super Ct. case No. CR 76710) and attempted burglary (Pen. Code, §§ 459, 664, Super. Ct. case No. CR 77412). He also admitted he had suffered a prior prison felony conviction for forgery (Pen. Code, § 667.5, subd. (b)). These cases were consolidated for appeal.

On appeal, Doane contends his convictions for possession of amphetamines and attempted burglary where he represented himself must be reversed because his advisory counsel provided ineffective assistance and the court failed to remind him of his Fifth Amendment right not to incriminate himself before he took the stand in his own defense. Doane also contends imposition of the one-year enhancement of Penal Code section 667.5, subdivision (b), violated the double-the-base-term limitation of Penal Code section 1170.1, subdivision (g). We find no merit to these contentions and affirm.

FACTS

Because Doane makes no contentions of error on appeal as to his trial for vehicle theft we state only the facts of his attempted burglary and his possession of amphetamines cases.

*Attempted Burglary*

At 10 p.m. on November 8, 1985, Du Cao noticed the hall light in front of his apartment went off. He went to the front door of his apartment and saw Doane at his next door neighbor's apartment trying to push the screen and shake the door's handle. Doane was two or three feet away. Du Cao saw Doane holding something red in one hand which he thought was a

flashlight and something steel colored in the other hand which he thought was a knife. Doane was attempting to break the door's lock with the knife. Du Cao asked what Doane wanted. Doane did not answer or look in Du Cao's direction.

Du Cao observed Doane over a half hour period and then called the police. The police arrived within two minutes of Du Cao's call. They found Doane in the apartment hallway, standing with his back against the wall and a knife in one hand. Doane said he was trying to get in to see his girlfriend. The resident of the apartment testified she did not know Doane and had never been his girlfriend. During a pat down search, the police found a red pen light and a small pocket knife on Doane.

Du Cao testified after the police left, he pulled a bench which had some plants on it over to the light fixture outside his apartment, stood on it and screwed in the light bulb which had been loosened. Du Cao noticed there were broken leaves on the ground beneath the light bulb, which had been there before he moved the bench.

Doane testified he was hiding in the darkened hallway of the apartment complex to escape from "Motorcycle Walt," a Hell's Angels bodyguard, who was chasing him due to a misunderstanding about some jewelry. Doane claimed he knocked on Du Cao's door in an attempt to find someone to call the police. Because Du Cao did not speak English, Doane opened the screen door of the next apartment, knocked but there was no answer. Doane was afraid Walt would hear the knocking, so he rang the doorbell and stood up against the wall for the next 30 minutes, eventually taking out his knife as he waited for Walt. Doane explained he lied to the police about his girlfriend living in the apartment because he was afraid of the police.

## Possession of Amphetamines

At 6:20 a.m. on June 21, 1985, San Diego State University Police Agent Ken Forney, while on routine patrol, saw Doane slumped over in the driver's seat of a Datsun Z car. Doane appeared to be asleep. The car radio was softly playing. Officer Forney saw in Doane's hand a small baggie containing an amber-colored vial, a cotton ball and two yellow pills which fell out of Doane's hand when Forney woke him. Doane tried to shove the baggie under the seat with his hand.

During a pat down search, the officer found two syringes in Doane's socks. In his jacket pocket the officer found a baggie containing amphetamines. Later, after the police booked Doane at San Diego State University, another syringe was found under Doane's chair.

Doane was transported and booked at the county jail. Officer Forney inspected Doane's arms and found four trackmarks, between one and three days old, with the most recent being only hours old.

Doane told Officer Forney at least three times that his name was Raymond Doane and his birthdate was June 4, 1949. Raymond Doane is his brother and June 4, 1949, is his brother's birthdate.

In his defense, Doane testified his ex-wife was involved in drugs and Doane did not approve. He had a plan to get his ex-wife away from drugs and as part of this plan, he jabbed his arm with a sewing needle and bruised it to simulate track marks.

The night before he was arrested, Doane had gone with his ex-wife to visit some of her friends at a house. While there he met Bobby Angel, a drug dealer, who did not like Doane because Angel was involved with Doane's ex-wife. At his ex-wife's request, Doane agreed to give Angel a ride home. Because it was getting chilly, Doane borrowed a jacket from someone at the house. On the way to Angel's house, Angel asked Doane to stop at a house on Hewlett Street so he could get some gas money from a friend for Doane. Doane waited in his car for Angel to return. When Angel did not return, Doane fell asleep. Doane testified when he was awakened by the officer, he gave his brother's name because he had been dreaming about him.

Doane claimed the drugs and paraphernalia found in the car had been planted there by Angel. He also claimed Angel had drugged him earlier in the evening by putting something into his coffee. He called a witness who said she saw Angel putting two pills in Doane's coffee but said nothing at the time because she thought the pills were NutraSweet or something similar.

DISCUSSION

I

Doane contends he was denied a fair trial by the failure of his appointed advisory counsel to attend the trial and to provide him with needed legal advice on impeaching a witness with prior inconsistent statements.[1]

---

[1] Doane has cited only one case directly addressing this issue (as opposed to the issue of the effectiveness of the defendant's own representation): *People* v. *Lucero* (1980) 200 Colo. 335 [615 P.2d 660]. In *Lucero,* the defendant claimed his advisory counsel failed to provide any assistance; however, the record showed counsel had offered assistance and the defendant had rejected it.

■ Under the Sixth Amendment of the federal Constitution, a defendant has a right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and is able and willing to abide by rules of procedure and courtroom protocol. (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]; *People* v. *Teron* (1979) 23 Cal.3d 103, 113 [151 Cal.Rptr. 633, 588 P.2d 773], overruled on other grounds in *People* v. *Chadd* (1981) 28 Cal.3d 739 [170 Cal.Rptr. 798, 621 P.2d 837].) It is not required that the defendant be competent to serve as counsel; "his technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself" (*Faretta* v. *California, supra,* 422 U.S. at p. 836 [45 L.Ed.2d at p. 582]); the defendant "need not pass a 'mini-bar examination,' " in order to represent himself. (*People* v. *Joseph* (1983) 34 Cal.3d 936, 943 [196 Cal.Rptr. 339, 671 P.2d 843].) The right to appear pro se exists to affirm the accused's individual dignity and autonomy. (*McKaskle* v. *Wiggins* (1984) 465 U.S. 168, 179 [79 L.Ed.2d 122, 134, 104 S.Ct. 944]; *People* v. *Joseph, supra,* at p. 946.) The core of the *Faretta* right is the defendant's right to have actual control over the case he chooses to present to the jury. (See *McKaskle* v. *Wiggins, supra,* at p. 174 [79 L.Ed.2d at p. 131].) "A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in *voir dire,* to question witnesses, and to address the court and the jury at appropriate points in the trial." (*McKaskle* v. *Wiggins, supra,* 465 U.S. at p. 174 [79 L.Ed.2d at p. 131].)

■ A defendant who chooses to represent himself may request the court to appoint an "advisory" or "standby" counsel[2] to assist him in the

---

Our research has disclosed another case, *Carter* v. *State* (Ind. 1987) 512 N.E.2d 158. In *Carter,* the defendant was granted the right to act as cocounsel. The court held that when the defendant ". . . chose to take control of his own defense, under the pretext of acting as 'co-counsel,' he waived his right to allege a Sixth Amendment violation with respect to counsel's adequacy. By alleging his attorney ineffective, Carter, in essence, is alleging himself ineffective; . . ." (*Id.* at pp. 163-164.) The court went on to conclude accepting the defendant's ". . . allegation of ineffectiveness of counsel would distort the Sixth Amendment. He has attempted to take the benefits of his constitutional right to self-representation without accepting the burdens which are inherently attached. When he chose to circumscribe 'the guiding hand of counsel' and navigate his own defense, Carter voluntarily traveled into the murky waters outside the Sixth Amendment and sank any claim of ineffective assistance of counsel." (*Id.* at p. 164.)

In California, a waiver of a defendant's right to counsel is not implied from a defendant's mere participation in his defense; there must be an explicit waiver of his right to counsel and advisement of the consequences of his decision to represent himself, including the inability to raise ineffective assistance of counsel on appeal. (See *People* v. *Spencer* (1984) 153 Cal.App.3d 931, 945 [200 Cal.Rptr. 693]; *People* v. *Lopez* (1977) 71 Cal.App.3d 568, 572 [138 Cal.Rptr. 36].)

[2] While the two terms ("standby" and "advisory") are often used interchangeably, the court in *People* v. *Kurbegovic* (1982) 138 Cal.App.3d 731, 757-758 [188 Cal.Rptr. 268],

presentation of the defense. (See *Faretta* v. *California, supra,* 422 U.S. at p. 835, fn. 46 [45 L.Ed.2d at p. 581]; *People* v. *Bigelow* (1984) 37 Cal.3d 731, 741-744 [209 Cal.Rptr. 328, 691 P.2d 994].) There is no constitutional right to advisory counsel; the decision to appoint an advisory counsel lies within a trial court's discretion. (*People* v. *Miranda* (1987) 44 Cal.3d 57, 75-76 [241 Cal.Rptr. 594, 744 P.2d 1127].) "[A] ' "defendant is not entitled to have his case presented in court both by himself and by counsel acting at the same time or alternating at defendant's pleasure" ' "; a defendant does not have "an absolute right to act as cocounsel." (*Ibid.*)[3] On the other hand, the court ". . . may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. [Citation.]" (*Faretta* v. *California, supra,* 422 U.S. at p. 835, fn. 46 [45 L.Ed.2d at p. 581].) ▪ In *McKaskle* v. *Wiggins, supra,* the United States Supreme Court explained the limits of an advisory or standby counsel's unsolicited participation: "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded.

"Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right

---

distinguished between them: "[T]he term 'standby' counsel generally relates to an attorney's being present to step in and represent an individual no longer able to represent himself, . . . [¶] 'Advisory' counsel, however, generally refers to an attorney who *assists* a litigant representing himself in a variety of ways, . . ."

See also the concurring opinion in *Chaleff* v. *Superior Court* (1977) 69 Cal.App.3d 721, 731 [138 Cal.Rptr. 735], footnotes 6, 7, where Justice Hanson construed " 'advisory counsel' to mean an attorney who is present in the courtroom at the defendant's side, does not speak for him, and does not participate in the conduct of the trial but only gives him legal advice" and construed " 'standby counsel' to mean an attorney who is present in the courtroom and follows the evidence and proceedings but does not give legal advice to the defendant. He 'stands by' in the event it is necessary for the trial court to revoke defendant's in propria persona status or even remove the defendant from the courtroom because of disruptive tactics so the case may proceed in an orderly manner to verdict."

[3] Some courts have used the term "hybrid representation" to describe the situation where a defendant acts as cocounsel. (See *State* v. *Gethers* (1985) 197 Conn. 369 [497 A.2d 408, 416]; *Cargill* v. *State* (1986) 255 Ga. 616 [340 S.E.2d 891, 900], cert. den. 479 U.S. 1101 [94 L.Ed.2d 180, 107 S.Ct. 1328] (1987); *People* v. *Partee* (1987) 157 Ill.App.2d 231 [110 Ill.Dec. 845, 511 N.E.2d 1165, 1177], cert. den. __U.S. __ [98 L.Ed.2d 1006, 108 S.Ct. 1043] (1988); *Parren* v. *State* (1987) 309 Md. 260 [523 A.2d 597, 599]; *State* v. *Franklin* (Tenn. 1986) 714 S.W.2d 252, 258-259; *State* v. *Harris* (1987) 48 Wn.App. 279 [738 P.2d 1059, 1062].)

to appear *pro se* exists to affirm the accused's individual dignity and autonomy. . . . From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself. From the defendant's own point of view, the right to appear *pro se* can lose much of its importance if only the lawyers in the courtroom know that the right is being exercised." (*McKaskle* v. *Wiggins, supra,* 465 U.S. at pp. 178-179 [79 L.Ed.2d at pp. 133-134].)

The particular duties of advisory counsel lie within the discretion of the trial court[4] and under the direction of the defendant,[5] with the defendant having ultimate control over his defense.

---

[4] The Wisconsin Supreme Court has held the "chief purpose" of appointing standby counsel "is to serve the interests of the trial court" rather than the defendant's interests. (*State* v. *Lehman* (1987) 137 Wis.2d 65 [403 N.W.2d 438, 444].) The court recognized other courts have used the term "standby counsel" "in a broad sense, encompassing assistance in pre-trial preparation," but found the trial court in exercising its discretion to appoint stand-by counsel was guided by whether the appointment would "be of *benefit to the court* in the trial of the case." (*Id*. at pp. 445-446, italics added.)

The California Supreme Court has stated: "We are not saying that the trial court may not in its discretion, upon what it may determine to be good cause shown, . . . permit a defendant who appears in propria persona to employ an attorney to sit by him and advise him during the presentation of the case in court, or even appoint an attorney (with the latter's consent) to render such advisory services to an indigent defendant who wishes to represent himself [citation]. These matters are within the sound discretion of the trial judge, who is in a position to appraise the courtroom situation and determine what procedure will best promote orderly, prompt and just disposition of the cause." (*People* v. *Mattson* (1959) 51 Cal.2d 777, 797 [336 P.2d 937].)

Recently, our Supreme Court found a trial court's failure to exercise its discretion to appoint advisory counsel required reversal and noted had the court exercised its discretion and denied appointment of advisory counsel that decision would have been an abuse of discretion given the complexity of the legal and factual issues in the case as well as the defendant's limited education and foreign citizenship (Canadian). (*People* v. *Bigelow, supra,* 37 Cal.3d at p. 743.) Thus, California recognizes the need for advisory counsel to assist the defendant as well as ensure an orderly courtroom and prompt disposition of the case.

[5] See *McKaskle* v. *Wiggins, supra,* 465 U.S. 168 (standby counsel provided legal advice during cross-examination, conducted voir dire of a witness and made objections); *People* v. *Rice* (1978) 40 Colo. 357 [579 P.2d 647, 650], cert. den. 439 U.S. 898 [58 L.Ed.2d 245, 99 S.Ct. 261] (standby counsel appointed to provide secretarial assistance and access to legal materials); *Jones* v. *State* (Fla. 1984) 449 So.2d 253, 257, cert. den. 469 U.S. 893 [83 L.Ed.2d 205, 105 S.Ct. 269] (standby counsel was available to provide legal advice); *Engle* v. *State* (Ind. 1984) 467 N.E.2d 712, 715 (standby counsel appointed to provide defendant with legal advice and access to legal materials); *Houston* v. *State* (Iowa 1976) 246 N.W.2d 908, 909 (standby counsel available for legal consultation and to conduct cross-examination); *State* v. *Carpenter* (La. 1980) 390 So.2d 1296, 1298 (standby counsel appointed to assist defendant in obtaining legal materials and in contacting witnesses); *Cardenas* v. *State* (Okla.Crim. 1985) 695 P.2d 876, 878 (when defendant claimed he was improperly denied law library access, court responded he had functional equivalent of law library in the form of standby counsel); *State* v. *Hahn* (1986) 106 Wn.2d 885 [726 P.2d 25, 27] (counsel appointed as research assistant and backup counsel); *Pote* v. *State* (Wyo. 1985) 695 P.2d 617, 624 (standby counsel helping with pretrial discovery, including witnesses).

Doane frames the issues to be answered on appeal as follows: "1) to what standard of adequate representation should advisory counsel be held, and 2) when does inadequate assistance of advisory counsel deprive a defendant of a fair trial?"

Initially, we note Doane has misframed the first issue. ■ Advisory counsel does not provide "representation" to the defendant, the defendant provides his own "representation."[6] The rights to self-representation and representation by counsel are " 'disjunctive.' " (*People* v. *Kurbegovic, supra,* 138 Cal.App.3d at p. 758, quoting *United States* v. *Halbert* (9th Cir. 1981) 640 F.2d 1000, 1009.)[7] As the Indiana Supreme Court observed in *Carter* v. *State* (Ind. 1987) 512 N.E.2d 158, 162: "Distinctly different policies underlie the right to counsel and the right to self-representation. The policy supporting the right of self-representation is personal autonomy. The defendant is the one who must suffer the consequences of his decision as to counsel; hence, he is entitled to choose his advocate, a lawyer or himself. *Faretta,* 422 U.S. at 820, 95 S.Ct. at 2533. The purpose of the Sixth Amendment guarantee of representation is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights and to assure him the guiding hand of counsel at every step in the proceeding. *Johnson* v. *Zerbst,* 304 U.S. 458, . . ."

An advisory counsel does not have the responsibility of providing adequate "representation" for the defendant; the defendant has that responsibility. The general rule is that a defendant cannot raise the inadequacy or ineffectiveness of his representation "once he has elected to 'shoot craps' in the trial court and appear in propria persona." (*People* v. *Harris* (1977) 65 Cal.App.3d 978, 987-988 [135 Cal.Rptr. 668]; *Faretta* v. *California, supra,* 422 U.S. at p. 834, fn. 46 [45 L.Ed.2d at p. 581]; *People* v. *Wright* (1977) 72 Cal.App.3d 328, 340 [140 Cal.Rptr. 98].)[8]

---

[6] See *People* v. *Brown* (1986) 179 Cal.App.3d 207, 214 [224 Cal.Rptr. 476], where the court stated: "It is settled that the attorney of record has the exclusive right to appear in court for his or her client and to control the court proceedings, so that neither the party himself nor another attorney can be recognized by the court in the conduct or disposition of the case. (*People* v. *Merkouris* (1956) 46 Cal.2d 540, 554-555 . . . .)"

[7] See also *Parren* v. *State, supra,* 523 A.2d at page 599, where the court stated "[T]he right to counsel and the right to defend *pro se* cannot be asserted simultaneously. The two rights are disjunctive. There can be but one captain of the ship, and it is he alone who must assume responsibility for its passage, whether it safely reaches the destination charted or founders on a reef."

[8] As the court stated in *People* v. *Lopez, supra,* 71 Cal.App.3d at page 574, in the context of reviewing what admonitions a court should give a defendant before allowing him to waive his right to counsel: ". . . 'Thus, whatever else may or may not be open to [a defendant] on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel." ' In other words,

The standard for advisory counsel's effectiveness must reflect the narrow role played by advisory counsel—that of giving legal advice and assistance to a defendant who has the control and responsibility for his own defense. To effectively fulfill this role, it seems to us, advisory counsel must be reasonably available to the defendant and should provide the advice and assistance to be expected of a reasonably competent attorney acting as a diligent, conscientious advisor and assistant. (Compare *People* v. *Pope* (1979) 23 Cal.3d 412, 424 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], setting the standard for an attorney who acts as an advocate and provides representation.)

The question remains as to when does an ineffective advisory counsel deny a defendant a fair trial and require reversal on appeal. We conclude the answer is: almost never.

As discussed previously, the general rule is that a defendant cannot complain on appeal that he was denied effective or adequate representation when he provided his own representation. This is because trial strategy and the presentation of the defense are matters under the defendant's control.

To the extent the defendant's claim of ineffective advisory counsel encompasses the adequacy of representation afforded, the defendant cannot obtain relief on appeal. The adequacy of representation may include the defendant's utilization of his advisory counsel. Advisory counsel is essentially a resource available to the defendant. If the defendant chooses not to use this resource (i.e., does not ask for advice or assistance), the defendant has only himself to blame. The defendant's non-utilization of an available resource goes to the adequacy of his preparation and representation. Similarly, if a defendant requests advice or assistance from his advisory counsel and counsel is unreasonably unavailable or unreasonably refuses to assist, a defendant who chooses not to pursue available remedies to obtain cooperation by advisory counsel (e.g., seeking a continuance to consult with a previously unavailable attorney, requesting substitution of advisory counsel or a court order requiring advisory counsel to cooperate on threat of contempt), has only himself to blame. His failure to pursue remedies reflect his own inadequate preparation and representation. By failing to bring to the court's attention his advisory counsel's recalcitrance, the defendant makes a tactical decision to waive assistance and advice from advisory counsel.

To succeed on a claim of ineffective advisory counsel, a defendant's claim must go to the narrow role of advisory counsel, not to the adequacy of the

by choosing to represent himself, he will be throwing away one of the criminal defendant's favorite contentions on appeal."

defendant's own representation or to trial strategy matters within his control. Matters which can be explained as a choice of trial tactics (no matter how poor a choice of tactics) will not support an appellate claim of ineffective advisory counsel; advisory counsel's ineffectiveness must affirmatively appear on the record.[9] Additionally to succeed on such a claim, the defendant must show advisory counsel's ineffectiveness resulted in the withdrawal of a potentially meritorious defense. (Compare *People* v. *Fosselman, supra,* 33 Cal.3d at p. 581.)

■ Here, reversal is not required. Doane contends his advisory counsel provided inadequate assistance because he was not present at trial and failed to help him impeach a witness. There is no requirement advisory counsel be present during the trial. Advisory counsel's absence may be due to the defendant's decision to not use advisory counsel or to not have advisory counsel present in the courtroom so the defendant may appear to stand alone before the jury. As the United States Supreme Court has stated: "The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear *pro se* exists to affirm the accused's individual dignity and autonomy. . . . From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself. . . .

". . . . . . . . . . . . . . . . . . . .

"[A] *pro se* defendant may wish to dance a solo, not a *pas de deux.* Standby counsel must generally respect that preference." (*McKaskle* v. *Wiggins, supra,* 465 U.S. at pp. 178-179, 187-188 [79 L.Ed.2d at pp. 133-134, 139].)

Here, Doane presented letters and other evidence documenting the problems he had reaching his advisory counsel before and during trial, but this evidence was not brought to the court's attention until the trial was completed and it was too late. Further, Doane's advisory counsel stated at Doane's motion for a new trial and substitution of counsel that Doane had not requested him to be present at the trial.

Doane's claim his advisory counsel failed to provide effective assistance in impeaching a witness with prior inconsistent statements must also fail since the record shows Doane's advisory attorney did provide advice on

---

[9] Ineffectiveness of advisory counsel which does not appear in the record on appeal (e.g., advisory counsel gave grossly negligent legal advice on which the defendant relied to his prejudice) could be raised in habeas corpus proceedings at which evidence outside the record may be taken. (Compare *People* v. *Fosselman* (1983) 33 Cal.3d 572, 581-582 [189 Cal.Rptr. 855, 659 P.2d 1144].)

impeaching a witness with prior inconsistent statements, Doane failed to make any complaint about the level of his advisory counsel's assistance during the trial and Doane has failed to show any prejudice. Doane was not deprived of an opportunity to impeach the witness with statements the witness made at the preliminary hearing. Doane eventually confronted the witness with all the witness's prior allegedly inconsistent statements. The fact those statements failed to impeach the witness was not a result of any ineffectiveness on the part of advisory counsel but was a result of the statements themselves and the witness's explanation for the earlier statements (e.g., translation errors). No reversal is required on this ground.

## II

Doane contends the trial court committed reversible error by allowing him to testify without first advising him of his Fifth Amendment right not to incriminate himself.

■ It is settled law that when an unrepresented defendant is about to take the stand in a criminal case, the court must make certain the defendant is aware of his constitutional right not to testify. (*People* v. *Longwith* (1981) 125 Cal.App.3d 400, 412 [178 Cal.Rptr. 136].) Failure to advise an unrepresented defendant of this right is an error of constitutional dimension. (*People* v. *Cervantes* (1978) 87 Cal.App.3d 281, 289 [150 Cal.Rptr. 819].) Reversal is required unless the error was harmless beyond a reasonable doubt. (*People* v. *Torres* (1982) 133 Cal.App.3d 265, 280-281 [184 Cal.Rptr. 39]; *People* v. *Jackson* (1978) 88 Cal.App.3d 490, 498 [151 Cal.Rptr. 688]; cf. *People* v. *Solomos* (1978) 83 Cal.App.3d 945, 954 [148 Cal.Rptr. 248].)

■ Here, the trial court failed to advise Doane of his privilege against self-incrimination just before he took the stand and testified in the two cases where he represented himself. This was error; however, we conclude the error was harmless beyond a reasonable doubt.

Here Doane's attempted burglary was witnessed by an individual standing two to three feet away over a half hour period, from shortly after the time Doane unscrewed a light bulb lighting the hall area until the police arrived. The witness saw Doane trying to break into the door jamb and lock with a knife. The police found the knife on Doane when he was arrested. There were scrape marks on the door and fresh paint chips and wood on the ground beneath the lock. Doane initially lied to the police, telling them his girlfriend lived in the apartment. The evidence of guilt was overwhelming. Nothing in Doane's testimony added to the proof of guilt (compare *People* v. *Jackson, supra,* 88 Cal.App.3d at p. 498); he made no incriminating

admissions but rather attempted to explain his actions at the apartment building.

Similarly, in the amphetamine case, nothing in Doane's testimony added to the proof of guilt; his testimony was directed to negating the intent to possess, i.e., to proving that the drugs were not his but belonged to the owner of the jacket and to Angel. As in the burglary case, the evidence of guilt was overwhelming. He was caught red-handed with drugs and drug paraphernalia in his hand, jacket pocket and socks. His only possible hope for an acquittal was to show the drugs were not his.

■■ During oral argument Doane argued reversal was required because harm flowed from the act of testifying itself with its testing of credibility by demeanor, impeachment and cross-examination. We disagree. To adopt this reasoning (that there is reversible error caused by jury's disbelief of a defendant's testimony) would result in adoption of a standard of per se reversal which we decline to do.

Moreover, Doane misunderstands the Fifth Amendment protection. The Fifth Amendment is not addressed to the wisdom of a defendant's decision to testify but to his right not to testify and to make the government prove its case against him without any help from him. As the court explained in *People* v. *Longwith, supra,* 125 Cal.App.3d at page 413, in a case involving a challenge to a Fifth Amendment waiver on the ground the waiver was not "intelligently" made: "When a defendant elects to forgo his Fifth Amendment right, whether it was 'intelligent' is not determined against a standard of what an experienced trial attorney would have considered the most optimum trial tactic, but whether or not the defendant was informed of the availability and the consequences of the right he was electing to waive. The logical extension of defendant's argument would necessitate the trial court determining if a waiver was the most 'intelligent' trial tactic before finding such a waiver to be valid. That would entail placing the exercise of a personal right under supervision of the trial court."

Doane's "prejudice" argument here is addressed to the wisdom of his tactical decision to testify (with its risk of being disbelieved); not to showing any incriminating statements he might not otherwise have made had the trial court advised him of his Fifth Amendment privilege not to testify. The wisdom or effectiveness of a self-representing defendant's trial strategy is not a ground for reversal on appeal. (See *Faretta* v. *California, supra,* 422 U.S. at p. 834, fn. 46 [45 L.Ed.2d at p. 581]; *People* v. *Harris, supra,* 65 Cal.App.3d at pp. 987-988.)

We conclude there is no reasonable doubt, based on the record before us, that had the court warned Doane of his privilege not to testify and Doane

had not thereafter elected not to testify, Doane would have been convicted (compare *People* v. *Torres, supra,* 133 Cal.App.3d at p. 281). Reversal is not required.

## III

■ Doane contends the court's imposition of a one-year enhancement under Penal Code section 667.5, subdivision (b), for a prior conviction violated the "double-the-base-term" limitation of Penal Code section 1170.1, subdivision (g). This contention is without merit and has been previously rejected by the courts. (See *People* v. *James* (1985) 170 Cal.App.3d 164, 166 [216 Cal.Rptr. 24]; *People* v. *Poole* (1985) 168 Cal.App.3d 516, 524 [214 Cal.Rptr. 502].)

### DISPOSITION

The judgment is affirmed.

Todd, J., and Staniforth, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 18, 1988. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.