[No. AO17621. First Dist., Div. Four. Nov. 7, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE LEE HILL, Defendant and Appellant.

**COUNSEL**

Paul D. Seeman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Maria J. Fonseca, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BALLACHEY, J.***—On October 9, 1981, the District Attorney of San Mateo County charged Willie Lee Hill by information with two counts each of burglary (Pen. Code, § 459),[1] robbery (§ 211), rape (§ 261, subd. (2), and false imprisonment (§ 236). The information further alleged service of four prior prison terms (§ 667.5). At his arraignment October 13, 1981, appellant pleaded not guilty to all counts and denied the prior convictions.

Prior to trial, appellant admitted three of the prior convictions alleged in the information. Upon motion of the prosecutor, the fourth prior was stricken.

On March 2, 1982, the jury found appellant guilty on all eight counts. On March 26, 1982, the court stayed imposition of sentence on the two burglary and two false imprisonment counts and sentenced appellant to a total term of twenty-five years for the two robbery and two rape convictions as enhanced by the three prior convictions.

Appellant claims prejudicial error in the disposition of his motions pertaining to substitution of counsel and self-representation. In discussing these claims, it is necessary to set forth at length the sequence of proceedings relating to these matters.

Douglas Gray, of the San Mateo County Private Defender Program, represented appellant at the preliminary hearing on September 28, 1981. On November 13, the court permitted Gray to withdraw and continued the matter to November 18 for the appointment of new counsel. (Although the record of November 13 is silent on this subject, statements of the court, counsel and appellant in later proceedings indicate that Gray withdrew for reasons of time and caseload conflicts.)

On November 18, Robert Daye, another attorney from the private defender program, appeared and indicated his willingness to represent appel-

---

*Assigned by the Chairperson of the Judicial Council.
[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

lant. However, he reported appellant was unwilling to accept him as his attorney. Upon questioning by the court, appellant confirmed he would prefer another attorney be appointed. Appellant waived time and the court vacated the trial date which had previously been set for December 7.

On November 20, Jeffrey Boyarsky, also of the private defender program, appeared for appellant. Appellant indicated his willingness to proceed with Boyarsky as his attorney. Trial was set for January 18, 1982. On December 22, 1981, appellant, appearing with Boyarsky, again waived time. Trial was rescheduled to February 16, 1982.

On February 10, 1982, the matter came before the criminal presiding judge on a motion submitted by Boyarsky for change of venue. At that time, appellant submitted a *Faretta*[2] motion for self-representation. Appellant stated, "My rights have not been protected by . . . the three lawyers that I had." The court continued the matter to the following day but warned appellant that were it to grant the *Faretta* motion, it would not give appellant a continuance: "You are on the trial calendar and you are going to trial."

At the February 11 hearing, appellant stated that he did not actually wish to represent himself but that he felt Boyarsky was not providing him adequate representation. "The reason why I am making this motion, not because I want to now, it's because I don't have confidence in this lawyer that I am appointed to now." Appellant complained that Boyarsky was not conducting the defense in accordance with his wishes and, in particular, that he had failed to discuss with him which witnesses were to be subpoenaed.

The judge stated that he had discussed the matter (apparently off the record) with Boyarsky, Gray, Daye and Jack McInerney, director of the private defender program. He continued, "You have expressed dissatisfaction with all of them. I have no reason to believe that if another attorney were appointed, that if they were competent and experienced at all, that they would give you any different advice." The judge warned appellant of the dangers of self-representation and expressed his confidence in Boyarsky. He refused to appoint substitute counsel or to appoint appellant as cocounsel with Boyarsky.

Appellant repeated that if different counsel were not appointed he would proceed in propria persona (pro. per.). The court granted the *Faretta* motion stating, "I think you understand the dangers that are involved. I think you understand the hazards you are undertaking and I think it's a big mistake but I am going to grant your motion . . . to proceed in propria persona and

---

[2]*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].

represent yourself." Appellant indicated he could not be ready for trial in five days. The court stated, "I am unwilling to continue it at this time. . . . The case is going to trial on Tuesday."

On Tuesday, February 16, the case came before the trial judge for *in limine* motions. Appellant submitted a motion for a continuance. The court inquired whether appellant still wished to represent himself. Appellant repeated that he was only representing himself because the court had refused to appoint counsel other than Boyarsky. The trial judge concluded that the criminal presiding judge had conducted "an entire Faretta hearing." He refused to appoint either different counsel or cocounsel. The trial judge, too, expressed his confidence in Boyarsky.

Appellant stated he required a continuance in order to obtain an expert witness on the unreliability of eyewitness identifications and to prepare the defense in general. The court denied the motion for a continuance. It did indicate that it would defer hearing the *in limine* motions until the next day.

The next day, February 17, appellant reported he did not feel sufficiently "knowledgeable and qualified" to plead his own case and withdrew his *Faretta* motion. He repeated, however, that he had no confidence in Boyarsky. Ultimately, the court, in what it described as an "abundance of caution," decided to reappoint Douglas Gray, the attorney who had represented appellant at the preliminary hearing. The court did not permit appellant to voice objections to this appointment. The court continued the matter for five days.

On February 22, Gray reported that appellant was unwilling to cooperate with him and wished to renew his *Faretta* motion. Appellant stated he did not believe Gray had sufficient familiarity with or time to prepare for his case. The prosecutor stated he would not oppose the renewed *Faretta* motion provided no continuance was sought. Appellant advised the court he was willing to proceed without a continuance. The court, with some reluctance, granted the *Faretta* motion and appointed Gray as advisory counsel but not cocounsel.

With appellant representing himself, the court took up several *in limine* matters, including the question of admission of a similar uncharged offense. Appellant noted at one point that he felt unprepared during these proceedings. "This is what my reason for a continuance was all about, so I could prepare for all of this, but it seems as though I was denied that. . . . I mean, I am arguing it on the basis of what is happening right now." The court repeated that no continuance was available.

The following day, the court reconvened for selection of a jury. Before selection began, appellant attempted to withdraw his *Faretta* motion: "I have been going over this and I know that I have caused a lot of problems to the court, but you know as well as I do, the district attorney knows that I am highly unqualified to present this case in front of the jury. And I have asked previously for cocounsel that was refused and I decided to plead this case myself. But that was a wrong move on my part and as time gets close to selecting a jury and everything, I feel frightened as to pleading this case myself. And I feel that I don't have a chance whatsoever in defending myself. And I would like to ask, at this time, that I be appointed counsel to defend me in this case." Gray indicated his willingness to accept reappointment but indicated he had reservations about proceeding immediately to jury selection: "I have considerable professional and ethical problems in accepting an appointment to start a jury selection in this matter of minutes when I have not seen the files for the motions, particularly in a case [in] which Mr. Hill is facing some extremely severe penalties."[3] On the basis of Gray's unwillingness to proceed immediately with jury selection and appellant's previous vacillations on the question of representation, the court denied his motion for reinstatement of appointed counsel. Appellant represented himself throughout the remainder of the trial.

Appellant claims error occurred at four points during this scenario—the disposition of the original motion for substitution of counsel, the denial of a continuance, the grant of the renewed *Faretta* motion and the denial of the subsequent motion for reinstatement of counsel. We note initially that, although the sequences of motions and rulings are not identical, this case bears many similarities to *People v. Cruz* (1978) 83 Cal.App.3d 308 [147 Cal.Rptr. 740]. There, the court found that inadequacies in a *Marsden*[4] inquiry tainted the defendant's purported waiver of counsel and decision to represent himself, that the trial court erred in denying the pro. per. defendant's subsequent motion for a continuance, and that it abused its discretion in denying his later motion for reinstatement of counsel. *Cruz* reversed on the basis of these cumulative errors. (*Id.*, at p. 334.) We examine in chronological order the errors claimed by appellant here.

### The Marsden Inquiry and Faretta Motion

■ Appellant's complaints to the criminal presiding judge that he was not receiving adequate representation from Boyarsky triggered that judge's

---

[3] Gray also stated, "I have not seen any of those materials since [the preliminary hearing] and there have been additional materials and I do not suspect that it would take very long for me to go through all of that, but it would take some time. I considered when this matter came up last Wednesday that the time between Wednesday and Monday would clearly be sufficient time if I got the materials."

[4] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

duty under *People* v. *Marsden, supra,* 2 Cal.3d 118, to inquire further into the bases for appellant's dissatisfaction. ■ *Marsden* itself and virtually every other decision sustaining a claim of *Marsden* error emphasize that a judge cannot base his disposition of a request for substitution of counsel on his or her own confidence in the current attorney and observations of that attorney's previous demonstrations of courtroom skill. (*Id.,* at p. 124; *People* v. *Lewis* (1978) 20 Cal.3d 496, 498 [143 Cal.Rptr. 138, 573 P.2d 40]; *People* v. *Munoz* (1974) 41 Cal.App.3d 62 [115 Cal.Rptr. 726]; *People* v. *Groce* (1971) 18 Cal.App.3d 292, 297 [95 Cal.Rptr. 688].) Instead, the court must inquire on the record into the bases of defendant's complaints and afford him an opportunity to relate specific instances of his attorney's asserted inadequacy. (*People* v. *Molina* (1977) 74 Cal.App.3d 544, 548-549 [141 Cal.Rptr. 533]; *People* v. *Munoz, supra,* 41 Cal.App.3d 62, 66; *People* v. *Groce, supra,* 18 Cal.App.3d 292, 297.) Depending on the nature of the grievances related by defendant, it may be necessary for the court also to question his attorney. (*People* v. *Young* (1981) 118 Cal.App.3d 959, 965-966 [173 Cal.Rptr. 700]; *People* v. *Penrod* (1980) 112 Cal.App.3d 738, 746 [169 Cal.Rptr. 533]; *People* v. *Munoz, supra,* 41 Cal.App.3d 62, 66; *People* v. *Groce, supra,* 18 Cal.App.3d 292, 297; cf. *People* v. *Terrill* (1979) 98 Cal.App.3d 291, 299-301 [159 Cal.Rptr. 360]; *People* v. *Huffman* (1977) 71 Cal.App.3d 63, 80-81 [139 Cal.Rptr. 264].)

■ It is clear some of the complaints related by appellant did not constitute grounds either for questioning the attorney or for substitution of counsel. At several points, appellant voiced his frustration at counsel's refusal to conduct the defense as he directed. For instance, appellant wanted to have "say-so [on] what motion I think should be filed." Tactical decisions such as these are the responsibility of the attorney, and disagreement between defendant and attorney on such matters is not a basis for substitution of counsel. (*People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008], cert. den., 401 U.S. 919 [27 L.Ed.2d 821, 91 S.Ct. 903].)

■ Other complaints voiced by appellant cannot be so easily dismissed. Appellant twice stated that Boyarsky had failed to confer with him concerning the preparation of the defense and had not explained his failure to subpoena witnesses whose testimony appellant believed would be exculpatory: "He was supposed to come up last week to discuss who was going to be subpoenaed on my behalf and he never did that. I asked his investigating officer a month ago. . . . He is just not corresponding with each other." Appellant later complained, "Evidently, my own [witnesses] are not even needed." Arguably this allegation was sufficient to require some further inquiry by the court. ■ "[I]nquiry into the attorney's state of mind is required only in those situations in which a satisfactory explanation for

counsel's conduct or attitude toward his client is necessary in order to determine whether counsel can provide adequate representation." (*People v. Penrod, supra,* 112 Cal.App.3d 738, 747; *People v. Young, supra,* 118 Cal.App.3d 959, 966.)

*People v. Groce, supra,* 18 Cal.App.3d 292, the first decision to articulate such a duty to inquire of counsel, disapproved the trial court's failure to inquire into defense counsel's failure to secure specific potentially exonerating evidence mentioned by defendant. While recognizing that defendants' claims of inadequate counsel are frequently meritless, the *Groce* court held that under certain circumstances the court is obliged "to make inquiry as to whether the failure to produce [the evidence] was a matter of discretion or neglect of appellant's counsel." (*People v. Groce, supra,* 18 Cal.App.3d 292, 296.)

■ Here, the criminal presiding judge did not question counsel on this subject or appellant's other complaints during either the February 10 or February 11 hearing. Had the court merely relied on appellant's assertions of inadequate representation and found them insubstantial, we might be disinclined to find an abuse of discretion in the failure to question counsel. (*People v. Young, supra,* 118 Cal.App.3d 959, 964-967.) It appears, however, that the judge did investigate appellant's claims of dissatisfaction through ex parte, off-the-record discussions with Boyarsky and appellant's previous appointed attorneys and the Director of the Private Defender Program. The judge alluded to these off-the-record discussions throughout the hearing: "Mr. Hill, I have discussed the case with Mr. Boyarsky; with Mr. Gray, your former attorney; Mr. Robert Daye, an attorney who was appointed to represent you and came up and talked to you; and also with Mr. McInerney who is the Director of the Private Defender program. [¶] I understand you want to proceed on your own behalf; that you have also talked to three attorneys and expressed dissatisfaction with all three of them. [¶] I know them all. I know them all to be extremely capable, experienced counsel. I have talked to four. . . . [¶] I have talked to three who said they talked to you and, knowing them, I assume that they have. [¶] You have expressed dissatisfaction with all of them. [¶] Well, I talked to [Boyarsky] a good deal. He knows an awful lot about your case. [¶] The problem I have, Mr. Hill, is the other lawyers that spoke with you indicate that you might have had some dissatisfaction with their services as well. [¶] The Director of the Private Defender program, who was here earlier and spoke to me this morning, Mr. McInerney, has not agreed to replace Mr. Boyarsky. I think his decision is a correct one. You have had the benefit of conferring with lawyers. [¶] I have talked to the other lawyers who have spoken with you, Mr. Hill, and they tell me that the problem remains the same."

Although the judge's informal inquiries were no doubt well intentioned, they do not serve the interests protected by *Marsden*. As *Marsden* and its progeny emphatically hold, a court may not go outside the record of the immediate prosecution and base the disposition of defendant's request upon observations of the attorney on other occasions. It follows that where a judge does question defendant's present and/or former attorneys concerning his complaints, that inquiry must be conducted in open court and in the presence of the defendant. (See *People* v. *Salazar* (1977) 74 Cal.App.3d 875, 887 [141 Cal.Rptr. 753].)

Failure to inquire adequately into a defendant's complaints results "in a silent record making intelligent appellate review of defendant's charges impossible." (*People* v. *Cruz, supra,* 83 Cal.App.3d 308, 318.) Here, the record before us is incomplete as well as silent. As the colloquys between the judge and Boyarsky, Daye, Gray and McInerney are not before us, we cannot evaluate the soundness of his conclusion that appellant's dissatisfaction was a product of his own temperament, not of any failings of counsel. Equally important, as appellant did not hear the respective attorneys' explanations to the judge as they were made, he could not effectively respond to them. This omission goes to the very heart of the *Marsden* inquiry. As the judge's comments indicate that he relied heavily upon ex parte communications outside the record to reach his disposition of appellant's request for substitution, we have no choice but to conclude *Marsden* error occurred.

█ *Marsden* error is typically treated as prejudicial per se, since the very nature of the error precludes meaningful appellate review of its prejudicial impact. (*People* v. *Marsden, supra,* 2 Cal.3d 118, 126; *People* v. *Hidalgo* (1978) 22 Cal.3d 826 [150 Cal.Rptr. 788, 587 P.2d 230]; *People* v. *Lewis, supra,* 20 Cal.3d 496, 499; *People* v. *Munoz, supra,* 41 Cal.App.3d 62, 67; *People* v. *Groce, supra,* 18 Cal.App.3d 292, 296-297; compare *People* v. *Minor* (1980) 104 Cal.App.3d 194, 199-200 [163 Cal.Rptr. 501] [limited remand for further *Marsden* inquiry appropriate where record otherwise free from error].) Here, appellant stated several times that he was only proceeding with his *Faretta* motion because of the court's disposition of his substitution request. This circumstance further militates in favor of a finding of prejudice on appeal. █ In *People* v. *Cruz, supra,* 83 Cal.App.3d 308, the court held that where *Marsden* error taints the disposition of a request for substitution, the defendant's subsequent pro. per. request does not effectively waive his right to counsel even where the court's admonitions otherwise satisfy *Faretta*: "The knowing and intelligent waiver of counsel envisions the election between viable alternatives. Defendant's decision to proceed in pro. per. was predicated upon his belief, mistaken or not, that he could not expect effective representation from the public defender's office. This belief was effectively reinforced by

the court's failure to fully explore defendant's charges. Under the circumstances, defendant cannot be said to have been fully apprised of his right to counsel and therefore did not effectively waive that right. [Citations; fn. omitted.]" (*Id.*, at p. 318.) Both the defective *Marsden* inquiry and the ineffective *Faretta* waiver induced by that error constitute deprivations of appellant's constitutional right to effective assistance of counsel. (*People v. Marsden, supra,* 2 Cal.3d 118, 126; *People v. Cruz, supra,* 83 Cal.App.3d 308, 317-319.)

### *Denial of a Continuance*

■ Independent of all of the above discussion, infringement of appellant's rights to due process and to effective assistance of counsel occurred in the denials of his requests for a continuance by the criminal presiding judge on February 11 and by the trial judge on February 16. Two principles frame our analysis of this question. ■ First, the *Faretta* right to self-representation is unconditional only where it is timely asserted. (*People v. Windham* (1977) 19 Cal.3d 121 [137 Cal.Rptr. 8, 560 P.2d 1187], cert. den., 434 U.S. 848 [54 L.Ed.2d 116, 98 S.Ct. 157].) ■ Second, whenever a pro. per. motion is granted, the defendant is entitled to a reasonable continuance to enable him to prepare for trial. "To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel." (*People v. Maddox* (1967) 67 Cal.2d 647, 653 [63 Cal.Rptr. 371, 433 P.2d 163]; see also *People v. Mendez* (1968) 260 Cal.App.2d 302, 306-307 [67 Cal.Rptr. 31]; *People v. Moss* (1967) 253 Cal.App.2d 248, 251-253 [61 Cal.Rptr. 107]; disapproved on other grounds, *People v. Williams, supra,* 2 Cal.3d at p. 906; *People v. Kerfoot* (1960) 184 Cal.App.2d 622, 645-646 [7 Cal.Rptr. 674].)

■ *Windham* holds that "in order to invoke the constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial." (*People v. Windham, supra,* 19 Cal.3d 121, 127-128.) An untimely request is committed to the discretion of the trial court. The *Windham* court identifies several criteria which should guide a court in evaluating such untimely requests: "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Id.*, at p. 128.) While a motion during or on the eve of trial is clearly untimely and therefore subject to the court's discretion, *Windham* does not define "a reasonable time prior to the commencement of trial." (*Id.*, at p. 128, fn. 5.)

 Appellant moved to represent himself on Thursday, February 11; trial was set for Tuesday, February 16. In light of the proximity to the commencement of trial the judge could, in his discretion, have denied the *Faretta* motion. Nonetheless, regardless of whether the grant of the *Faretta* motion was mandatory or discretionary, once the court granted that motion, it was obliged also to grant appellant's request for a continuance. "While it is now settled that a trial court may *deny* a request for self-representation made on the very eve of trial, on the ground that granting the motion would involve a continuance for preparation, the very rationale of that doctrine requires that, if the trial court, in its discretion, determines to *grant* the request for self-representation it must then grant a reasonable continuance for preparation by the defendant. (See *People* v. *Cruz* (1978) 83 Cal.App.3d 308, 322-326 [147 Cal.Rptr. 740].) The fact that defendant's prior counsel had announced ready for trial . . . does not show that defendant personally was ready to assume the burden of trying the case. Nor does that fact that that counsel was to be 'advisory' to defendant show that defendant did not need a reasonable time to prepare himself to seek or receive advice." (*People* v. *Fulton* (1979) 92 Cal.App.3d 972, 976 [155 Cal.Rptr. 327]; italics in original.) ██ ██ ██ ██ ██ *People* v. *Morgan* (1980) 101 Cal.App.3d 523 [161 Cal.Rptr. 664], echoes *Fulton*'s holding that, while the disposition of an untimely pro. per. motion is discretionary, the disposition of a request for continuance following the grant of such a motion is not: "If, on the other hand, the trial judge allows the defendant to discharge his counsel and a request for a continuance in order to prepare is made, then it appears a reasonable continuance is mandatory and a failure to grant such continuance would be reversible error. [Citation.]" (*Id.*, at p. 531.)[5]

The trial judge, hearing appellant's renewed motion for a continuance on the date set for trial, was in a similar position to the criminal presiding judge. The trial judge questioned appellant concerning his desire to continue in pro. per. and in effect reopened the *Faretta* question. ██ ██ ██ ██ ██ In light of the untimeliness of appellant's pro. per. request, the asserted need for a continuance and appellant's equivocation as to whether he genuinely wished to proceed in pro. per., the trial judge could have considered reinstatement of counsel.[6] As counsel was not reappointed, the court

---

[5]In contrast, the granting of an untimely request to discharge appointed counsel does not entitle a defendant to a continuance to allow a different attorney of his choice to prepare for trial. (*People* v. *Rhines* (1982) 131 Cal.App.3d 498, 506 [182 Cal.Rptr. 478]; see also *Morris* v. *Slappy* (1983) 461 U.S. 1, 12-13 [75 L.Ed.2d 610, 620-621, 103 S.Ct. 1610, 1616-1617].)

[6]"In an appropriate case, there might arise a duty for a trial judge to reexamine whether the accused wished to continue exercising his right of self-representation." (*People* v. *Wilks* (1978) 21 Cal.3d 460, 468, fn. 5 [146 Cal.Rptr. 364, 578 P.2d 1369].) However, where, unlike this case, the *Faretta* motion originally granted was timely, the court may not, at the time of trial, reappoint counsel against the defendant's wishes. (*Wilkes, supra,* at p. 468.)

could not force appellant to go to trial on the basis of only five days' preparation.[7] *People* v. *Jackson* (1978) 88 Cal.App.3d 490 [151 Cal.Rptr. 688], which predated *Fulton* and *Morgan*, is distinguishable. There, a defendant, who was not in custody prior to trial, "had reason to believe that he would be representing himself 73 days prior to trial and was given 10 days to prepare his defense after his *Faretta* motion was formally granted. Further, he had actively participated in his defense prior to that time." (*People* v. *Jackson, supra,* at p. 502.) No such mitigating circumstances are present here to permit us to depart from the rule, originally stated in *Maddox* and applied to untimely pro. per. requests in *Fulton,* that once a pro. per. request is granted a defendant is entitled to a reasonable continuance. (*People* v. *Maddox, supra,* 67 Cal.2d 647, 652-653; *People* v. *Morgan, supra,* 101 Cal.App.3d 523, 531; *People* v. *Fulton, supra,* 92 Cal.App.3d 972, 975-976; *People* v. *Cruz, supra,* 83 Cal.App.3d 308, 322-326.) ▮ An erroneous denial of a pro. per. defendant's motion for a continuance is, like *Marsden* error, usually treated as prejudicial per se. (*People* v. *Maddox, supra,* 67 Cal.2d 647, 653; *People* v. *Morgan, supra,* 101 Cal.App.3d 523, 531; *People* v. *Fulton, supra,* 92 Cal.App.3d 972, 976; *People* v. *Mendez, supra,* 260 Cal.App.2d 302, 306; *People* v. *Moss, supra,* 253 Cal.App.2d 248, 253.)

### The Renewed Faretta Motion and the
### Request for Reinstatement of Counsel

As a consequence of the *Marsden* error, the defective *Faretta* waiver and the erroneous denial of a continuance, appellant was unrepresented by counsel from February 11 to February 17 and obliged to attempt to prepare personally for trial during that period. On February 17, appellant, admitting his own inability to represent himself, withdrew his *Faretta* motion. The court appointed Gray as counsel. Although the previous day it had denied appellant any continuance for his self-representation, it granted the newly appointed attorney a continuance of five days. (Cf. *People* v. *Maddox, supra,* 67 Cal.2d 647, 652-653.) As related earlier, when the court reconvened on February 22, it granted appellant's renewed *Faretta* motion and relieved Gray. On February 23, the court refused to permit appellant to withdraw the *Faretta* motion and to reinstate Gray. Appellant attacks both the grant of the renewed *Faretta* motion and the denial of the request for reinstatement.

---

[7]The record does not support respondent's assertion that the only ground urged for a continuance was appellant's intent to obtain certain "expert" testimony or eyewitness identification which the court ruled would, in any event, be inadmissible. Before both the criminal presiding judge and the trial judge, appellant indicated that he personally needed time to plan and prepare his defense.

■ Similar criteria govern each of the discretionary determinations now challenged. As previously noted, *Windham* states the factors pertinent to consideration of an untimely pro. per. request such as this surely was. A trial court should "establish[] a record based on such relevant considerations" to facilitate appellate review. (*People* v. *Windham, supra,* 19 Cal.3d 121, 128-129.)

■ Here (even disregarding the previous errors) the trial court's own findings and other matters of record indicate that the *Windham* factors weighed heavily against granting the pro. per. motion. Defendant's "prior proclivity to substitute counsel" had been amply demonstrated. Trial proceedings had already commenced although a jury had not yet been selected. Appellant's principal concern appeared to be not that Gray was incompetent but that, as the court observed, appellant wanted to "run your own show."

In light of the court's statements on the record that in its estimation the first four *Windham* factors all weighed against renewal of self-representation, it is clear the court relied exclusively on the final factor—disruption or delay in the proceedings—in granting the motion. It appears the court believed that, as suggested by the prosecutor and current defense counsel, under *Windham* and *Morgan,* it had no choice but to grant the renewed *Faretta* motion where the defendant had agreed to waive a continuance: "Although it is my opinion that in fact under Faretta and Windham, I probably would have denied your motion when originally made because it was also coupled with a motion for continuance, you have clearly advised the court that you are prepared to proceed and you don't wish to have a continuance, that you wish to proceed on your own. I have to say I don't think it is wise, obviously, that is my position, but that is not the issue. [¶] So the court at this time will grant your Faretta motion and will relieve Mr. Gray as counsel."

This reasoning misconstrues *Windham* in two respects: First, *Windham* does not so severely limit a court's discretion to deny an untimely *Faretta* request. Where a request is untimely without good reason, a trial court is not required to grant it against its own better judgment. We see no indication in *Windham* or *Morgan* that, as a matter of law, the delay factor overrides the more subjective factors such as reasons for the request and prior proclivity to substitute counsel. (See *People* v. *Windham, supra,* 19 Cal.3d 121, 128-129; *People* v. *Morgan, supra,* 101 Cal.App.3d 523, 529-531.) Second, as noted earlier, the case law recognizes a pro. per. defendant's entitlement to a reasonable continuance upon request. Therefore, in applying the delay factor, the court should consider whether a continuance is reasonably necessary to self-representation, not merely whether a defendant, in the determination to proceed in pro. per., has acquiesced in waiving

a continuance. In short, where the sole consideration supporting granting the untimely *Faretta* motion is the defendant's willingness to forego a continuance (despite his representations that he considers one necessary) the most prudent course would be to deny the *Faretta* motion rather than condition its grant upon denial of the continuance.

The *Windham* factors primarily facilitate efficient administration of justice, not protection of a defendant's rights. Thus, it is not clear that a defendant may claim prejudice from the erroneous granting of an untimely *Faretta* motion. However, defects in the *Faretta* ruling are clearly pertinent to whether the court should have granted appellant's motion the following day for reinstatement of counsel.

*People* v. *Elliott* (1977) 70 Cal.App.3d 984 [70 Cal.Rptr. 984, 139 Cal.Rptr. 205], identifies five factors essentially paralleling the *Windham* criteria which govern appellate review of the denial of a request for reinstatement of counsel: "Relevant factors should include, among others, the following: (1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (*Id.*, at pp. 993-994; *People* v. *Cruz, supra,* 83 Cal.App.3d 308, 319-320.) *Cruz* identifies an additional factor underlying the *Elliott* holding: "Although not specifically enumerated within the list of factors set forth, the court in *Elliot[t]* was strongly influenced by the reason for the trial court's denial of the defendant's motion." (*People* v. *Cruz, supra,* 83 Cal.App.3d 308, 321.)

This case is virtually identical to *Elliott* and *Cruz.* As in *Cruz,* appellant's prior history with respect to substitution of counsel and self-representation was tainted by *Marsden* error and erroneous denial of a continuance. In *Elliott,* defendant moved for reinstatement immediately after jury selection; here, he offered his motion immediately before it. (Compare *People* v. *Smith* (1980) 112 Cal.App.3d 37, 48-51 [169 Cal.Rptr. 108] [after completion of testimony of key prosecution witness]; *People* v. *Smith* (1980) 109 Cal.App.3d 476, 485 [167 Cal.Rptr. 303] [after close of prosecution's case].) In *Elliott,* it was estimated reinstatement would necessitate a ten-day delay; in *Cruz,* a delay of two to three weeks. Here, prospective defense counsel stated merely that he was reluctant to go to trial immediately. There was no indication reinstatement would require a continuance of more than a few days.[8] Appellant's reason for requesting reinstatement

---

[8] In fact, as noted earlier, on February 23 Gray reaffirmed his feeling that the five days previously allowed would have been enough, assuming he had access to the files.

was, as in *Elliott* and *Cruz,* his own inability to represent himself; further, the court had previously expressed its own misgivings regarding appellant's probable effectiveness.

The trial court gave two reasons for denying reinstatement. In light of appellant's previous vacillations on the question of counsel, it interpreted the reinstatement motion as "an attempt now to interfere with the orderly administration of justice." We cannot sustain this determination because judicial error tainted the disposition of appellant's previous vacillations. (See *People* v. *Cruz, supra,* 83 Cal.App.3d 308, 318-322; *People* v. *Smith, supra,* 109 Cal.App.3d 476, 486.)

The second reason given, which appeared dispositive to the trial court was Gray's unwillingness "to start a jury selection in a matter of minutes." The court did not inquire how much time Gray desired for reasonable preparation. *Cruz* and *Elliott* hold unequivocally that a far stronger showing is necessary before the court may base its denial of reinstatement on its concern for delay in the proceedings: "In both *Elliot[t]* and the present case, no showing was made by the prosecution that the requested continuances would cause a disruption in the calendar of the courts, that it would be detrimental to the prosecution of the cases, or that it would be contrary to the interests of justice. Due to this failure, it must be presumed that the continuance requested by defendant in the instant case would not have caused disruption to the court or prejudice to the prosecution beyond that normally involved in a three-week delay. . . . [¶] [W]e can infer from the record that the principal reason for this court's denial of defendant's motion was the deputy public defender's lack of capacity to proceed immediately to trial. *This factor should be irrelevant to the consideration of a defendant's motion.*" (*People* v. *Cruz, supra,* 83 Cal.App.3d 308, 321; italics added.)

Here, although the prospective jurors had been summoned, there was no indication that even a delay of 10 days such as requested in *Elliott* would be necessary. Further, as in both *Cruz* and *Elliott,* there was no showing by the People that a continuance of this particular case "would cause a disruption in the calendar of the courts [or] would be detrimental to the prosecution of the cases." This is especially true in light of both the court's and the prosecutor's attitudes toward earlier delays. Nonetheless, here, "it is obvious that the trial judge only would consider granting defendant's request if the [attorney] was prepared to proceed at once. . . ." (*People* v. *Elliott, supra,* 70 Cal.App.3d 984, 996.) In light of the previous errors pertaining to appellant's pro. per. representation, the numerous *Elliott/Cruz* factors supporting reinstatement of counsel and the court's improper reliance on Gray's desire for a continuance, we conclude the court abused its discretion in denying reinstatement of counsel.

This is an extremely frustrating case. Obviously, appellant, as a result of his vacillation on the subject of representation, bears some responsibility for the complicated record we have reviewed. The courtesy and patience of the trial judges in dealing with appellant is to be commended.[9] However, we cannot ignore the fact that a domino sequence of events compromised his rights to receive effective assistance of counsel.

The ex parte and off-the-record *Marsden* inquiry rendered appellant's original *Faretta* waiver defective. The erroneous denial of a continuance independently infringed his right to effective self-representation. Had Gray remained as counsel after his original reappointment, these errors might be dismissed as harmless. However, by granting the renewed *Faretta* motion, the trial court repeated the earlier error by conditioning self-representation upon waiver of a continuance. Absent a showing of the degree of delay or of any serious effect on the administration of justice, the denial of appellant's request for reinstatement of Gray as counsel was an abuse of discretion. Standing alone, such abuse of discretion in denial of a request for reinstatement constitutes only state law error. (*People v. Elliott, supra,* 70 Cal.App.3d 984, 998.) Here, however, the *Elliott* error aggravated previous errors of federal constitutional magnitude. (*People v. Marsden, supra,* 2 Cal.3d 118, 126; *People v. Maddox, supra,* 67 Cal.2d 647, 652-653; *People v. Cruz, supra,* 83 Cal.App.3d 308, 317-326.)

The result was that appellant was obliged to represent himself on the basis of a few days' preparation despite his claim (before jury selection) that he had neither the ability nor the preparation to do so effectively. We are unable to conclude that the domino effect of the cumulative errors was harmless beyond a reasonable doubt. Accordingly, as in *Cruz,* we are obliged to reverse.

By this disposition we do not intend to countenance manipulation of judicial processes by a defendant by repeated and untimely requests for substitution of counsel, pro. per. representation, or reinstatement of counsel. (See generally *Morris v. Slappy, supra,* 461 U.S. at pp. 12-13 [75 L.Ed.2d at pp. 620-621, 103 S.Ct. at pp. 1616-1618]; *People v. Smith, supra,* 109 Cal.App.3d 476, 485-486.) However, we believe that close adherence to

---

[9]This court is not oblivious to the "game" quality of many *Marsden/Faretta* proceedings as described by Justice Kaus in his "reluctan[t]" concurrence in *People v. Cruz, supra,* 83 Cal.App.3d 308, 334. The "game," if any, however, must be played by preestablished rules in order to ensure equal justice under law. Defendants who attempt to "manipulat[e] the system to their advantage, basing various ploys and gambits on real or imagined contradictions in applicable Supreme Court opinions" must be handled in a manner consistent with the basic principles of those decisions, no matter how frustrating the task or how disingenuous their motions may appear. While not the "Stephen Potter . . . manual" of Justice Kaus' prayer, we will attempt to offer some guidelines in this area.

*Marsden* and *Windham,* rather than liberality in granting untimely pro. per. requests, provides the most effective safeguard against such abuse.

Where a court thoroughly inquires, on the record, into a defendant's specific allegations of attorney misconduct or inadequacy and, exercising discretion, denies substitution, a defendant's subsequent *Faretta* waiver, though partially induced by that denial, will not be defective. Second, as *Windham* indicates, except where there is a legitimate reason for the delay, untimely *Faretta* requests are generally disfavored. Where a court does grant such a request, it must, however, grant defendant's request for a reasonable continuance to prepare his case.

As *Cruz* and this case indicate, where these principles are not observed, it is impossible for a reviewing court to determine with confidence whether the defendant suffered prejudice. As some of these errors infringed federal constitutional rights, such uncertainty is intolerable and the conviction cannot stand. As the cumulative errors discussed here require reversal, we do not reach appellant's remaining contentions.

The judgment is reversed.

Caldecott, P. J., and Poché, J., concurred.