GUS BEN COLGAIN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 16278

May 28, 1986                                        719 P.2d 1263

*Kilpatrick, Johnston & Adler,* Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Virginia Shane,* District Attorney, *William C. Jeanney,* Deputy District Attorney, and *Wilbur H. Sprinkel,* Deputy District Attorney, Humboldt County, for Respondent.

# OPINION

*Per Curiam:*

Appellant was convicted of being an ex-felon in possession of a firearm. The court found that Colgain had three prior felony convictions, and sentenced him to life imprisonment. On appeal, Colgain contends that the court erred in: (1) refusing to grant a continuance in order to allow Colgain the opportunity to subpoena witnesses; (2) allowing impeachment by use of a prior felony conviction contrary to NRS 50.095; (3) allowing the State to amend the information to add a third prior conviction to the habitual felony count after the verdict on the primary offense; and (4) considering prior convictions which were constitutionally infirm in finding Colgain to be an habitual felon. Because we conclude that Colgain did not receive a fair trial, we reverse the conviction on the primary offense.

Over Memorial Day weekend, 1984, Colgain and his girl friend, Linda Tate, traveled from their home in Salt Lake City to Valmy, Nevada, in order to retrieve some of Colgain's belongings from his previous residence. They stayed with Colgain's friend, Earl Parrick. While in Valmy, Colgain had a dispute with Parrick's neighbor, Jess Allen Bogue. Parrick and Colgain testified that Bogue repeatedly threatened to kill Colgain. On May 27, Bogue came to Parrick's trailer looking for Colgain, and a fight ensued. Colgain chased Bogue off the property, warning him not to return, and that if he did return, Colgain would assume Bogue had a gun or a knife and Colgain would have one waiting. Bogue left, and Colgain and his girl friend decided to leave Valmy at once in order to avoid further confrontation. As he was packing up his truck, Colgain saw Bogue drive up to the Parrick residence. Colgain grabbed a black powder pistol[1] which was in the

---

[1]The black powder pistol was a nineteenth century relic which used black powder, a ball and wadding.

cab of his truck, and pointed it toward Bogue. Colgain then observed that Bogue was followed by a police vehicle, and Colgain placed the pistol in the cab of his truck.[2]

Bogue, assisted by the two officers, placed Colgain under citizen's arrest for battery. Colgain indicated that he wished to place Bogue under arrest for battery, and the officers informed him that he had that right. Parrick came out and convinced Bogue and Colgain that they should not pursue their complaints against each other. At this point, according to Bogue, one of the officers stated, "We didn't drive all the way out here for nothing, so we are going to arrest somebody." Colgain was charged with being an ex-felon in possession of a concealable firearm. The State later added allegations of habitual criminality.

Colgain was represented by the public defender's office. Through no fault of his own, Colgain was shuffled among five different public defenders from the time of his arrest until the time set for trial. Prior to trial, Colgain twice asked to be appointed to represent himself due to what he alleged was inadequate representation by the various public defenders. Approximately five weeks before his trial, Colgain wrote a letter to the court in which he again complained that he was not being adequately represented, and demanded to "have a say" in his defense. On the day of trial, Colgain complained that the public defender had refused to subpoena witnesses necessary to Colgain's defense,[3] and asked to be appointed to represent himself. The motion was granted. Colgain immediately requested a continuance in order to subpoena the witnesses, which was denied.

During the trial, Colgain moved to preclude the prosecutor from inquiring into Colgain's prior felony convictions. The motion was based, in part, on NRS 50.095.[4] The judge ruled that the fact of the prior convictions could be elicited for impeachment if Colgain took the stand. The prosecutor elicited statements from Colgain that he had been convicted of felonies three times. Colgain then moved for a mistrial on the basis that, since Colgain

---

[2]Bogue had called the Humboldt County Sheriff's office to complain of the "battery" committed upon him by Colgain. Two officers had been dispatched, and had met Bogue at a Valmy restaurant, where Bogue filled out what was purported to be a "citizen's arrest form."

[3]Colgain's attorney admitted that he had told Colgain that the public defender's office "didn't have the manpower" to serve the subpoenas.

[4]NRS 50.095 provides, in relevant part:

2. Evidence of a conviction is inadmissible under this section if a period of more than 10 years has elapsed since:
    (a) The date of the release of the witness from confinement; or
    (b) The expiration of the period of his parole, probation or sentence, whichever is the later date.

finished serving his sentence on one of the priors more than ten years before, the fact of that conviction was inadmissible for purposes of impeachment under NRS 50.095. The court admitted that the fact of that conviction should not have been brought in, but blamed Colgain for not addressing the age of the conviction and denied the motion on that basis.

Colgain was convicted by the jury of one count of being an ex-felon in the possession of a concealable firearm. The court found that Colgain was an habitual criminal, having been three times before convicted of a felony. Colgain was sentenced to life imprisonment with the possibility of parole.

Colgain contends that the trial court erred in refusing to allow a continuance to permit him to subpoena witnesses. He contends that where a defendant's request to act as his own attorney is granted, he is entitled to a reasonable opportunity to prepare his defense. Two California cases clearly support Colgain's position. In People v. Maddox, 433 P.2d 163 (Ca. 1967), Maddox had sought unsuccessfully to represent himself for over two months prior to trial. On the morning trial was to begin, the court granted Maddox's request to represent himself, but denied his motion for a continuance (Maddox wished to subpoena witnesses). The California Supreme Court reversed, holding that the denial of the continuance deprived Maddox of the opportunity to prepare adequately for his defense. "To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel." Id. at 176. This language was quoted with approval in People v. Hill, 196 Cal.Rptr. 382 (Ca.App. 1983), in which the court held that granting Hill's request to represent himself while denying him a continuance in order to prepare his defense constituted infringement of Hill's rights to due process and effective assistance of counsel. Id. at 389. The Hill case is similar to the case at bar in that the defendant requested to represent himself only after his case was transferred to three different public defenders, and the attorney appointed at the time of trial had, according to Hill, failed to discuss with him the witnesses to be subpoenaed.

In this case, Colgain wished to subpoena witnesses who would substantiate Colgain's claim that the pistol was inadvertently left in his truck by Kelly Kirk, and was discovered by Colgain enroute to Valmy. According to Colgain, the witnesses would also have confirmed Colgain's claim that he picked up the pistol only because he feared for his life. Under the standards set forth in Banks v. State, 101 Nev. 771, 710 P.2d 723 (1985), it was an abuse of discretion for the trial court to deny Colgain's request for a continuance.

Under the circumstances of this case, the denial of Colgain's request for a continuance rendered him unable to prepare for trial. We disagree with the trial court's holding that Colgain's letter of September 6 constituted an unequivocal expression of his intent to represent himself, and thus that he had adequate time to prepare his defense. That letter, which is contained in the record, constituted a plea for adequate representation, in which Colgain expressly recognized his inability to represent himself without the concerned aid of the public defender's office. Granting Colgain's motion to represent himself while denying him the opportunity to prepare his own defense constituted a denial of due process and of the right to effective assistance of counsel. Reversal is warranted.

Aside from this, we note that the entire record reveals a lack of respect for the fundamental principle that every criminal defendant is entitled to a fair trial. Prior to trial, Colgain was shuffled among five different attorneys. He continuously complained concerning the lack of communication and preparation by the various public defenders. Indeed, the record shows that no discovery motions were ever made by any of the public defenders appointed to represent Colgain. The public defender's office informed Colgain that it would not serve subpoenas on witnesses identified by Colgain who could apparently corroborate his defense. When Colgain finally requested and was granted the right to conduct his own defense, he was not permitted any time whatsoever in which to prepare that defense or procure the attendance of his witnesses. The trial transcript indicates that Colgain was unable to adequately represent himself at that time. During jury selection, the prosecutor revealed that he had discussed the case with a member of the jury panel. Another juror testified that she was a close friend of the district attorney who tried the case. Colgain did not challenge these jurors for cause. Although Colgain attempted to make proper motions and objections during the course of the trial, he often had difficulty in articulating the basis and authority for his propositions. Nevertheless, the trial court apparently did not take Colgain's inexperience into account in considering such matters. An example of this is the failure of the trial court to determine the age of the prior convictions while allowing their use for impeachment under NRS 50.095.

The cumulative effect of the factors discussed above prevented Colgain from presenting an effective defense. We note that Colgain has maintained that he momentarily picked up an antique and allegedly unloaded weapon owned by another in order to

deter what he believed to be a threat to his life.[5] It is possible that further inquiry from the witnesses identified by Colgain, as well as consideration of the nature of the offense charged and the time already served by Colgain, will lead the State to conclude that retrial on this charge would simply compound what appears to have been extremely poor judgment from the time of Colgain's arrest through the nature and expense of the prosecution and subsequent incarceration of the defendant.[6] While perhaps technically within the scope of activity proscribed by law, it seems unlikely that the legislature had this type of conduct in mind when it enacted the statute in question.

Our disposition of this issue renders it unnecessary to discuss Colgain's remaining claims of error. For the foregoing reasons, the judgment of conviction is reversed, and the case remanded for further proceedings consistent with this opinion. We further order the clerk of this court to issue the remittitur forthwith.

---

[5]Parrick's testimony lent support to the assertion that Colgain had cause to believe Bogue desired to kill Colgain.

[6]Although our decision reversing the conviction on the primary offense renders it unnecessary to consider the issues presented as to the validity of the habitual criminality charge, it should be noted that, if Colgain is reprosecuted, the State must rebut Colgain's contention that constitutional infirmities appear on the face of each prior conviction. *See, e.g.,* Anglin v. State, 86 Nev. 70, 464 P.2d 504 (1970); Scott v. State, 97 Nev. 318, 630 P.2d 257 (1981).