Filed 2/27/14  P. v. Pennings CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063009 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD240171) |
| OTONIEL TYLER PENNINGS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey F. Fraser and Louis R. Hanoian, Judges.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

Otoniel Tyler Pennings appeals from a judgment of conviction of one count of residential burglary while other individuals were present in the home. Pennings contends the trial court abused its discretion by denying his continuance requests after granting his motion to represent himself. We find no abuse of discretion and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *The Charges*

The San Diego County District Attorney filed an information charging Pennings with one count of residential burglary (Pen. Code, §§ 459, 460)[1] and alleging that a person, other than an accomplice, was present in the residence during the burglary (§ 667.5, subd. (c)(21)). The information further alleged Pennings had two prior prison convictions (§§ 667.5 subd. (b), 668).

### B

### *Pretrial Motions*

### 1

At the trial call on July 30, 2012 (a Monday), Pennings asked the court to appoint new counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Pennings mentioned he wanted to have certain witnesses questioned. According to defense counsel, however, Pennings was unable to provide the name of the person whose house he thought he was visiting at the time of the incident. The only witnesses Pennings

---

[1]    All further references are to the Penal Code unless otherwise indicated.

mentioned interviewing were these individuals present in the house and identified in the police report.  Defense counsel did not believe it was necessary to interview those individuals because they did not tell the police Pennings was violent or threatening.  They only said he was in the house, which he admitted.

The court denied the *Marsden* motion, finding defense counsel was effectively representing Pennings and there was no breakdown in communication.

2

After the court denied the *Marsden* motion, Pennings waived his right to counsel and asked to represent himself pursuant to *People v. Lopez* (1977) 71 Cal.App.3d 568, 571.[2]  The court cautioned Pennings against representing himself, but Pennings stated he had been pro per before and the information he would need to represent himself was in the law library.  The court asked Pennings if he recognized he was going to trial "in the next few days, next week?"  Pennings said he needed evidence before he could go to trial.

Pennings acknowledged he understood everything on the *Faretta/Lopez* waiver form.  The court again cautioned Pennings against representing himself stating, "You understand that, in this court's opinion, you're not doing the smart thing.  You should let . . . a lawyer represent you.  I'm not saying you can't do it.  I'm saying that it's just not the smart thing.  Do you understand that?"  Pennings understood.  The court relieved

---

[2]     "In *People v. Lopez*, [*supra*, 71 Cal.App.3d at p. 571], the court suggested a set of advisements 'designed to ensure a clear record of a defendant's knowing and voluntary waiver of counsel.' "  (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 705, fn. 5.)  The waiver of the right to counsel and request for self-representation is also referred to as a *Faretta* motion based upon *Faretta v. California* (1975) 422 U.S. 806.

defense counsel stating, "The defendant will act as his own attorney." The court ordered appointment of a legal runner and an investigator to assist Pennings.

When the prosecutor suggested sending the case to trial on the same day, the court said, "I can't send you out today because he needs an investigator and runner."

Pennings then asked for a continuance stating he did not have the discovery. The discovery consisted of a police report and a record of Pennings's priors. He had a redacted copy of the police report, but the court asked the prosecutor to provide Pennings with the discovery packet.

The court continued the matter for two days. While the court said they were going to "talk about whether or not you're ready to go to trial," the court also stated, "I think you should be because, quite frankly, what the [prosecutor] has told me regarding the amount of pages in the discovery, you should be able to read that and be ready to go to trial by this afternoon. But we'll give you [until] Wednesday. Look through it. Do any legal research you have. You're pro per now, so you'll get some library privileges; you'll get a runner; you'll get an investigator. And we'll see where we're at on Wednesday."

3

The following Wednesday, August 1, 2012, Pennings reported he was not ready for trial. He acknowledged he received the discovery from the prosecutor the day before. He said it was not long and he had read it. Pennings acknowledged the court had told him to be ready. However, he stated he wanted time to address a couple of issues to "properly defend myself." He said he wanted to file a motion under section 995 based on lack of intent and he wanted to go to the law library. He also said he needed materials to

4

file the motion. The court said his prior attorney was a good lawyer and she would have filed a motion if she thought there was a basis to do so.

Pennings said he wanted an investigator to "make a few questions to possible other witnesses for my defense." However, he was not willing to identify the witnesses unless the prosecutor was not present. The court denied the continuance and assigned the matter to a trial department. The court reminded Pennings it had told him on Monday to be ready to go to trial and the discovery was "quite simple." The court also said Pennings could talk to the trial judge about it further.

4

Pennings asked the trial judge for a continuance stating he wanted to file a motion and wanted an investigator to interview witnesses. He acknowledged that on Monday, July 30, 2012, the court had ordered the Office of Assigned Counsel (OAC) to provide him with investigative services. He also acknowledged he received some papers on Tuesday, July 31. He claimed he had to submit paperwork for the investigator. After considering Pennings' arguments as well as those of the prosecutor, the trial judge denied the request for continuance.

In discussing the witness list, Pennings gave the name of a potential witness and acknowledged he needed to get a statement from him. The court explained if Pennings received a statement from the witness, he needed to provide it to the prosecutor.

After discussing pretrial motions by the prosecution, the court asked Pennings if he had any motions. Pennings stated he did not have any motions other than a

5

continuance request.  The court again denied the motion stating Pennings raised no new reasons he had not raised before the case was sent to trial.

Pennings asked for a continuance for a third time that day to obtain clothes for trial from the OAC.  The court again denied the continuance request, but signed a dress out order, commenting this was something Pennings should have done when he was granted pro per status.

At the conclusion of the first day of trial, the court provided Pennings with a copy of the preliminary hearing transcript.  Pennings used this transcript to cross-examine witnesses at trial.

C

*Trial Evidence*

On the morning of April 4, 2012, Pennings jumped a fence in the back of a house located on Mission Village Drive and entered the home through a sliding glass door at the back of the house.  A 14-year-old girl awoke when the sliding door in her bedroom opened.  She saw Pennings open the door, push the curtains aside and walk in.  At first, she wondered if it was her brother, but soon realized she did not recognize the man. Pennings walked around her bed and grabbed her phone from where it was charging on the nightstand.

She told him to give her phone back.  Pennings asked repeatedly, "Where are the keys?"  He returned the phone to her, but told her, "Don't call anyone."  He did not apologize or indicate he made a mistake in entering the home.

6

Pennings left her bedroom and went down the hall. He went to a key rack located next to the front door of the house and grabbed keys off the rack. He tried to open the front door, which was locked.

The girl woke up her father, who was sleeping on the couch. The father saw Pennings standing at the front door reaching for a pair of keys on the rack with one hand and reaching for the doorknob with his other hand. When the father realized he had never seen Pennings before and he did not belong in the home, the father ran toward Pennings and grabbed him. The father hit and pushed Pennings toward the wall so Pennings could not open the door. In the meantime, the girl called the police.

While the father and Pennings struggled, Pennings said, "Let me go. Let me go. I don't want to get arrested." At no point did Pennings indicate this was a mistake or that he thought he was in someone else's house. Instead, he repeated, "Let me go. I don't want to go to jail."

The girl's brother awoke from the noise, came out of his room and ran to help. Pennings stopped struggling when the brother threatened him with a baseball bat. The father and the brother pinned Pennings to the floor and held him there until the police arrived. While they waited for the police, Pennings did not respond to any questions about whether Pennings lived in the neighborhood.

Pennings testified he was trying to go to a friend's house. He stated he thought he was entering a house that belonged to people he knew. He claimed he did not realize he was in the wrong house until he picked up the girl's phone. He stated it did not occur to

7

him to leave through the back door. Pennings said he did not intend to steal anything when he entered the house and he denied grabbing keys.

Pennings admitted on cross-examination that his friend, Chris, who lives on a neighboring street, does not live on a corner and there is no access through a fence from a side street. However, Pennings then testified he was not actually going to Chris's house, but rather to John's house to "buy some time" and to make a telephone call until he could go back to Chris's house to get things he had left there. Pennings admitted he never told the residents he made a mistake and was in the wrong house. He first mentioned this story while being questioned by a police officer at the station.

D

*Verdict and Sentencing*

The jury found Pennings guilty of the crime of burglary with a nonaccomplice present in the residence during the burglary. After a bench trial, the trial court made true findings as to the first and second prison priors. The court sentenced Pennings to the middle term of four years with an enhancement of two years for the prison priors.

DISCUSSION

" 'A continuance in a criminal trial may only be granted for good cause. (§1050, subd. (e).) "The trial court's denial of a motion for continuance is reviewed for abuse of discretion." [Citation.] "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial

8

judge at the time the request is denied." ' "  (*People v. D'Arcy* (2010) 48 Cal.4th 257, 287-288.)

When a court grants a waiver of the right to counsel and a motion for self-representation under *Faretta v. California* (1975) 422 U.S. 806, the defendant is ordinarily "entitled to a *reasonable* continuance to enable him to prepare for trial.  'To deny him that opportunity would be to render his right to appear in propria persona an empty formality, and in effect deny him the right to counsel.' "  (*People v. Hill* (1983) 148 Cal.App.3d 744, 756, italics added.)

In *People v. Hill*, the defendant was charged with two counts of burglary, two counts of robbery, two counts of rape, and two counts of false imprisonment.  (*People v. Hill*, *supra*, 148 Cal.App.3d at p. 749.)  The appellate court reversed, finding the trial court abused its discretion when it required the defendant to go to trial with five days of preparation after the court granted a motion for self-representation.  (*Id.* at p. 757-758.)  Under the circumstances of that case, "regardless of whether the grant of the *Faretta* motion was mandatory or discretionary, once the court granted that motion, it was obliged also to grant appellant's request for a continuance."  If " 'the trial judge allows the defendant to discharge his counsel and a request for a continuance in order to prepare is made, then it appears a *reasonable* continuance is mandatory and a failure to grant such continuance would be reversible error.' "  (*Id.* at p. 757, italics added.)

The Supreme Court has since explained that trial courts have broad discretion to deny a request for continuance if the request appears to be based upon a desire to delay the proceedings.  (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037-1038.)  "Even in a

9

capital case, if the defendant cannot show he or she has been diligent in securing the attendance of witnesses, or that specific witnesses exist who would present material evidence, '[g]iven the deference necessarily due a state trial judge in regard to the denial or granting of continuances,' the court's ruling denying a continuance does not support a claim of error under the federal Constitution." (*Id.* at pp. 1039-1040; see *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1689 ["if the court determines the defendant's request [for a continuance] is merely a tactic designed to delay the trial, the court has the discretion to deny the continuance and require the defendant to proceed to trial as scheduled either with his counsel or in propria persona"].) A request for a continuance that accompanies a *Faretta* motion is strong evidence the defendant's purpose is dilatory. (*People v. Burton* (1989) 48 Cal.3d 843, 854.)

In this case, Pennings had appointed counsel for at least three months and obtained one 30-day trial continuance before the matter came to trial. Pennings waited until the day of trial to request a different appointed attorney. When the court denied the motion, Pennings waived representation and asked to represent himself. The court denied the People's suggestion to send the case to trial that day stating the defendant needed an investigator and a legal runner.

Pennings asked for a continuance because he needed the discovery. After inquiring about the amount of discovery and confirming it consisted of the police report and documentation regarding defendant's own priors, the court ordered the prosecutor to provide the discovery packet and continued the trial for two days. The court advised Pennings to prepare for trial. Based on the limited discovery the court stated Pennings

10

should be prepared as early as that afternoon, but he would have until Wednesday. The court ordered the appointment of a legal runner and an investigator to assist Pennings.

Under the circumstances of this case, we conclude a two-day continuance was reasonable. The court properly considered the nature of the charge and the extent of the discovery. Additionally, unlike in *People v. Wilkins* (1990) 225 Cal.App.3d 299, 303, where the defendant was not granted propria persona privileges until after the trial concluded, Pennings obtained his privileges on the day he asked to represent himself.

Two days later, Pennings said he was still not ready for trial even though he acknowledged he had received and read the limited discovery materials in the case. He asked for a continuance to do legal research to file a motion and to have an investigator question other possible witnesses. When the court asked Pennings what witnesses he wanted to contact, Pennings said he would not discuss it with the prosecutor present. The court knew Pennings had not been able to identify potential witnesses to his prior attorney for over three months, nor could he provide the address of the individual he purportedly intended to visit instead of the victim's home. The court denied the motion for continuance and assigned the matter to a trial department. This was a proper exercise of the court's discretion under the circumstances.

The trial court also properly exercised its discretion in denying Pennings repeated motions for continuance. After confirming the OAC was appointed to assist Pennings with investigative support and a legal runner, the trial court denied the motion for continuance stating it did not appear anything had changed since the previous judge

11

denied the continuance motion. The court stated they would select the jury the following morning.

That same day, after the in limine hearing Pennings again asked for a continuance because he needed to obtain clothing. The court commented this was something Pennings should have done as soon as he was granted pro per status, but signed a dress-out order. The court stated this was not a basis for continuance.

The following day, Thursday, August 2, 2012, Pennings once again asked for a continuance, this time arguing he had not been able to use the law library and the prosecutor had just given him new case authority. The court noted he had been pro per since Monday and the court had trailed the case for two days to allow him to prepare for trial. The court confirmed the discovery consisted of reports from two police officers, totaling 18 pages. The court denied the continuance request, stating it would not grant a continuance to anyone based upon new case authority. The prosecutor gave Pennings a copy of the two cases that morning. Pennings successfully distinguished the authority and defeated the People's motion to introduce evidence of Pennings prior convictions to prove the element of intent.

Pennings argues on appeal, "[i]t is hard to imagine that an in-custody, pro. per. defendant could request an investigator, have one come to visit him in jail to discuss the investigation that needed to be done, have the investigator find and interview the witnesses and report back to the defendant in just two days. An attorney free from custody would need more time than that." This statement is speculative and is not supported by the record.

Pennings has not shown he was diligent in securing the attendance of witnesses, or even that specific witnesses exist who could present material evidence in his defense. (*People v. Jenkins, supra,* 22 Cal.4th at pp. 1039-1040.)  Pennings received paperwork to request an investigator no later than Tuesday, July 31, 2012.  When Pennings identified a possible witness during the in limine hearing on Wednesday, the court told him he needed to produce any statement he could to obtain from this witness if he intended to call the witness.  Pennings also stated he had an address documented a block from the victim's house.  However, there is no indication that Pennings sent an investigator to that address.  The jury was not empaneled until Thursday afternoon, August 2.  Pennings was not required to put on his defense case until the afternoon of Friday, August 3.  Therefore, there is no indication in this record Pennings was precluded from having an investigator attempt to contact his purported witnesses in time to put on a defense.

The record in this case shows the court properly exercised its discretion to deny Pennings' continuance requests, which appeared to be for the purpose of delay.  (*People v. Jenkins*, *supra*, 22 Cal.4th at pp. 1037-1038.)  The Legislature has declared the public policy supporting expeditious disposition of criminal matters.  "Excessive continuances contribute substantially to [congestion of the criminal courts] and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails. It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial

officers . . . to expedite these proceedings to the greatest degree that is consistent with the ends of justice." (§ 1050, subd. (a).) It is for this reason the Legislature requires a continuances in criminal cases to be supported by good cause. (§ 1050, subd. (e).)

The court granted a reasonable continuance after Pennings elected to represent himself. Thereafter, Pennings did not show good cause or diligence to support his continuance requests.

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


NARES, J.


McINTYRE, J.